REBECCA HOUGH, Respondent, v. ST. LOUIS CAR
COMPANY et al., Defendants; KOBUSCH AUTO-
MOBILE COMPANY, Appellant.

St. Louis Court of Appeals.. Submitted on Briefs November 3, 1909.
Opinion Filed November 30, 1909.

1. **NEGLIGENCE: Automobiles: Speed Ordinance, Violation of:
Evidence.** In an action by a person for personal injuries sus-
tained by reason of being struck by an automobile, *held,* there
was sufficient evidence to warrant the submission of the case
to the jury on the theory defendant was guilty of negligence in
running its automobile in excess of the maximum speed pre-
scribed by a municipal ordinance.

2. **WITNESSES: Competency: Opinion Evidence: Speed of Auto-
mobile.** A street car motorman of twelve years' experience,
who was accustomed to notice the speed of vehicles on the
streets, was competent to give an opinion as to the speed of an
automobile.

3. **NEGLIGENCE: Automobiles: Instructions: Existence of Facts
Disproved not to be Presumed.** Where, in an action for in-
juries to a pedestrian struck by an automobile, defendant relied
on the defense of contributory negligence, and the pedestrian
testified that before starting to cross the street she looked and
listened for vehicles and neither saw nor heard anything, and
that she did not see the automobile nor hear any whistle, an in-
struction that it was assumed that the pedestrian and the
driver of the automobile saw each other, if either or both had an
unobstructed view of the street for a sufficient distance, etc.,
was erroneous, because stating a presumption against the evi-
dence, the existence of facts disproved by the evidence not
being presumed by the law.

4. **——: ——: ——: Refusal: Covered by Other Instructions.**
It was not error to refuse instructions submitting the defense of
contributory negligence, where other instructions submitted this
defense in as specific and concrete form as defendant was en-
titled to have it submitted.

5. **——: ——: ——: Last Chance Doctrine: Contributory
Negligence: Both Submitted.** Where plaintiff relies upon the
fact he was not guilty of contributory negligence and that his
injury was caused by the negligence of defendant, he is not en-
titled to an instruction on the so-called "humanitarian doc-

trine." By invoking that doctrine, plaintiff confesses he was guilty of negligence, and therefore is not entitled to instructions authorizing a verdict in his favor on a finding by the jury that he was not chargeable with his contributory negligence, provided defendant could have prevented the accident.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey,* Judge.

REVERSED AND REMANDED.

*Sears Lehmann* and *Lehmann & Lehmann* for appellant.

(1) Instruction number 1, given by the court, submitted to the jury the violation of the speed ordinance as a basis of recovery. This was erroneous, as there was no evidence that the automobile, at the time of the accident, was running in excess of eight miles per hour, the ordinance speed. All the defendants' witnesses placed it under this speed. Plaintiff's only witness on speed was Redd, who testified he didn't know how fast it was going. Instructions without evidence to support them are erroneous. Pattison's instructions to juries in Missouri civil cases, par. 95 (1906 Ed.), and fifty Missouri cases there cited. "A mere scintilla of evidence is not sufficient." Commissioners v. Clark, 94 U. S. 284; Reidenbach v. Ellerbe, 115 Mo. 588; Powell v. Railroad, 76 Mo. 80; Bank v. Hamlin, 67 Mo. App. 487; Champagne v. Harney, 189 Mo. 709. (2) Instruction number 2, told the jury that the law presumed plaintiff saw defendant's automobile. It was pleaded as a defense that plaintiff did not look for and hence, did not see the automobile, and this defense was supported by the uncontradicted evidence of both plaintiff and defendant. The law does not presume facts disproved by the evidence. Presumptions vanish in the face of evidence. Haycroft v. Grigsby, 88 Mo. App. 354; Adams v. McCormick, 110 Mo. App. 367; Moberly v. Railroad, 98 Mo. 183; Lynch v. Railroad, 112 Mo.

420; Morton v. Heidorn, 135 Mo. 617; Schepers v. Railroad, 126 Mo. 665; Myers v. Kansas City, 108 Mo. 480. Instruction number 16 should have been given. Instruction number 5 given, is somewhat similar but contains the word "negligently" in describing plaintiff's conduct, and in no given instruction was plaintiff's negligence in concrete form submitted. Instruction number 7, like numbers 16 and 14, should have been given. Defendant had the right to have the law of negligence as to the specific facts in the case submitted to the jury, and not merely generally. Defendants alleged negligence was thus submitted. Plaintiff's was not. Murray v. Transit Co., 176 Mo. 183; Hartman v. Transit Co., 112 Mo. App. 439; Casey v. Bridge Co., 114 Mo. App. 47.

*William Hilkenbaumer* for respondent.

(1) There was ample evidence in the case to justify the court in instructing the jury on the question of a violation of the city ordinance. (2) Instruction number 2, given by the court, correctly states the law. Schaffstette v. Railroad, 175 Mo. 142; Epstein v. Railroad, 197 Mo. 733. (3) The instructions given to the jury do not eliminate the defense that plaintiff, without looking and listening, stepped in front of the automobile. This defense was submitted in the court's instruction number 5. (4) The court will examine the evidence, and if it appears that the verdict was manifestly for the right party, errors in the instructions will be disregarded. Peterson v. Transit Co., 199 Mo. 331; Henry v. Railroad, 113 Mo. 525; Foster v. Railroad, 112 Mo. App. 67; Miller v. Lange, 84 Mo. App. 219; Wagner v. Edison Elec. Co., 82 Mo. App. 287; Barkley v. Cemetery Assn., 153 Mo. 300; King v. King, 155 Mo. 406; Burns v. Liberty, 131 Mo. 372; Brewer v. Transit Co., 105 Mo. App. 503.

STATEMENT.—Plaintiff, while crossing a public street in the city of St. Louis, was struck by one of defendant's automobiles, in charge of one of its employees, and thereupon instituted the present action, charging negligence generally, failure to use ordinary care to discover the position of plaintiff at the time of the accident, and that after plaintiff was, or should have been, discovered, failure to stop or change the course of the machine so as to have avoided the accident, running the machine at a high and dangerous rate of speed, failure to give plaintiff warning of the approach of the machine, and violation of the automobile speed ordinance of the city of St. Louis. This ordinance, No. 20,536, prohibits the driving of a machine run by electricity, gasoline or steam over the streets of the city at a rate of speed exceeding eight miles per hour, or in the parks of the city at a rate of speed exceeding six miles per hour.

The answer was a general denial, together with a plea of contributory negligence, in that plaintiff carelessly and negligently and without looking and listening, stepped directly in front of the moving machine. There was also a plea of compromise which was abandoned at the trial. The reply was a general denial.

According to the testimony of the plaintiff, who was a lady sixty-three years old, she was going down town and started from her home to take a street car, intending to take a southbound street car. It was about noon. She went from her home on Kossuth avenue and down Kossuth avenue to Grand avenue, intending to take a Grand avenue car at the corner of Kossuth and Grand avenues. When she got to the corner of Kossuth and Grand, there was no car in sight and she stopped a few minutes to talk to a lady friend, whom she met on the corner, until she saw her car coming from Lee avenue on the north. When she first saw the street car it was near Lee avenue, a street which was a block north of Kossuth, whereupon she started over the street

(Grand avenue) to be ready for the car when it reached Grand and Kossuth. Before starting to cross the street, she looked and listened to see if any vehicles were crossing the street. Saw nor heard anything that would prevent her from crossing over. As she started over, nothing occurred to warn her, and all she had in her mind was that she was safe in crossing and didn't see anything to prevent her; started across Grand avenue and had crossed over both of the street car tracks when the first thing she knew she was hit. She was afterwards told that she was hit by an automobile, but she did not see the automobile at all. She heard no whistle nor horn blown, nor heard any unusual sound at all. Her hearing is perfectly good. She had been thrown on the street and rolled over and over, the automobile had rolled her over and over, and the wheels had run over the left side of her abdomen. She gave further testimony as to the extent of her injuries. Before she was injured she was strong and healthy and hearty and could do her work; was confined to her bed five weeks after the accident before she was able to dress and sit up, and her sufferings in mind and body "were beyond description," as she said. On cross-examination, witness repeated that she neither saw nor heard the automobile; saw the street car coming, also a wagon, while she was on the crossing; didn't hear any man halloo to her to stand still and had got almost to the curb on the far side of the street when she was struck; was walking just as she usually did to get across, "pretty fast," in order to get over. At the time she was spry on her feet; saw the street car stop before it crossed the tracks at Kossuth; had seen it after it left Lee avenue and had kept her eye on it as it was coming along, so as to get over and ready to take it when it got to the stopping place; did not see the automobile at all; it was a bright, light day.

Two physicians testified to their treatment of plaintiff and to the injuries which she had received.

The motorman of the street car, who was running that car at the time the accident occurred to plaintiff, testified that about noon he was coming south, running his car along Kossuth and Lee, on Grand, at the crossing there; was coming south along East Lee avenue, he thought, and noticed an automobile pass by, "at a pretty good speed." The next thing he saw, the machine hit Kossuth avenue and there was a lady crossing Kossuth avenue and the right front wheel of the automobile hit the lady "along about the limbs," knocked her down and ran over her and went on about ten feet and stopped. He pulled up his car before they had taken the lady up; they took her up in front of his car and took her to the doctor's office. Saw her struck by the automobile. When he first saw the automobile, it passed in front of his car on the west side going south and his car was going south. He was standing on the front end of the car in charge of the car and going toward Kossuth avenue. The machine was going at "a pretty good speed;" to the best of his opinion, he stated, it was going at a rate of fifteen or twenty miles an hour; had been a motorman "going on" twelve years and is accustomed to noticing the speed of vehicles on the street; hadn't noticed this particular machine, but to the best of his opinion it was going inside of fifteen or twenty miles an hour. His car was going between eight and ten miles an hour, something like that, when the machine passed it. All he noticed about the automobile was that when it crossed the tracks at Kossuth avenue, the chauffeur jumped up, the jar threw him up. It was a level track; had not noticed the automobile as it passed him, but after it passed him and he got to Kossuth avenue, the automobile was still going at a very good rate of speed, "because," as he said, "if it had slowed down, it wouldn't have had the up and down motion," as it crossed the tracks; did not judge the rate of speed of the machine after it crossed the tracks. When the automobile crossed Kossuth avenue, it was going about twelve

miles an hour, he "guesses." It went straight across Kossuth, without diverging either way. There were two people in the automobile. The day was bright and warm and dry. Heard no warning or whistle or horn from the automobile. If there had been any would have heard it because his vestibule glass was down in front. It was a warm day and he had that down and if there had been any warning at all he would have heard it; nothing to prevent his hearing. On cross-examination he stated that the machine slowed up after it had passed him, but he could not say how much it slowed up, but knows it was going "at a pretty good rate," as it went across Kossuth avenue; knows that because he saw it jump. The machine slowed up when it approached the track; after it crossed the track, wouldn't be sure at what rate it was going; from his best judgment, and at the distance he was from the automobile, it must have been going about ten miles an hour.

Plaintiff introduced other witnesses as to the accident. Defendant introduced witnesses, who gave testimony tending to show that the automobile was not going at to exceed eight miles an hour, and while the chauffeur was not examined as a witness, the man who was in the car with him at the time of the accident, testified that they were coming down Grand avenue and just as they got to Kossuth avenue, which he said was a bad crossing, as the bricks are in a very bad state between the tracks, the chauffeur slowed down and witness leaned forward and said to the chauffeur, "All right, nothing coming," and they crossed the track. Witness looked out to see if anything was coming and there was nothing coming. They crossed the tracks and when they got about twenty or thirty feet south of the south crossing of Kossuth avenue, plaintiff came across the street "cat-a-cornered." He thought she was going to stop, but she kept on going. He hallooed to her and she hurried instead of stopping, and the chauffeur swung the car off to the right as sharp as he could, and plaintiff went

right in front of the car and the car knocked her down and she fell in front of the hood, and witness jumped out behind the car and helped her; couldn't tell whether the wheel passed over her or not. Witness and others helped carry her into the doctor's office and later on took her home. On cross-examination, this witness testified that the attention of the chauffeur was not absorbed by anything going up Kossuth avenue, but he could direct his entire attention to what was in front of him. From the time they left Lee avenue on toward Kossuth, they had been going probably eight or ten miles an hour and had slowed down probably to three miles an hour to take the crossing. His guess was, to the best of his judgment, that they were going about the rate of six miles an hour when the accident occurred.

There was other testimony on the part of the defendant as to the extent of the injuries to plaintiff and as to the rate of speed of the car and as to the opportunities of the plaintiff to have avoided the accident.

At its own motion the court gave eight instructions. It gave two at the instance of defendant and refused six.

There was a verdict for plaintiff for $5000, and on a motion for new trial being filed, as well as a motion in arrest of judgment, the court announced that it would overrule the motion for new trial, provided plaintiff remitted $2000 of the judgment. The remittitur was made, the motion, as well as that in arrest, overruled and judgment entered for plaintiff for $3000 and costs. Whereupon defendant prayed and perfected an appeal to this court, having duly saved exception.

REYNOLDS, P. J. (after stating the facts).— Counsel for defendant assign five errors, upon which they rely as ground for reversal. The first and second errors assigned are to the first and second instructions, given of the court's own motion, while the third, fourth and

fifth assignments are to the refusal of the court to give the fourteenth, sixteenth and seventeenth instructions, as asked by the defendant. The first instruction given counts upon the negligence of the defendant in running the automobile at a speed in excess of that allowed by the ordinance of the city of St. Louis. The error assigned on this instruction is that it is not supported by the testimony in the case; that plaintiff's own witness, the motorman, testified that he did not know how fast the automobile was going. We do not think this objection tenable, nor do we construe the testimony of this witness to be as claimed by appellant's counsel. The point is made as to the testimony of this motorman, that he was not shown to be competent to testify as to the speed at which the automobile was going. We think his testimony shows the contrary. In itself, and under the testimony as to speed, this instruction is correct and is sustained by the evidence in the case.

The second instruction given by the court of its own motion is as follows:

"2. You are further instructed that it was not only the duty of the plaintiff in the circumstances shown by the evidence in this case, and whilst she was on a public highway in the city of St. Louis to exercise ordinary care for her own safety by both looking and listening for approaching cars and vehicles upon the street which might come in collision with her, but it was also the duty of the defendant's servant or agent in driving its said car to exercise ordinary care by looking out for persons on the street ahead of its car who were apparently in or approaching a point of danger of collision with his car, and upon the appearance of such danger to use ordinary care to avoid injuring any such person; *and the court further instructs you that whether or not, as a matter of fact, the plaintiff saw the approaching car in question or whether or not the defendant's agent or servant in fact saw the plaintiff approaching or in a place of danger, each is presumed and held by law to have*

*seen the other, if either or both had an unobstructed view of the street for a sufficient distance and length of time to avoid a collision by the exercise of ordinary care."*

The words particularly objected to in this instruction are those we have underscored. We are compelled to hold this instruction, with these words included, is erroneous and that the giving of it is reversible error. There is not only no evidence to support it, but it is a presumption against the evidence, and under the facts in the case and of the defense of contributory negligence, it should not have been given. As is held in many cases, the law does not presume facts which are disproved by the evidence.

Referring to the refusal of the fourteenth, sixteenth and seventeenth instructions asked by defendant, counsel for defendant contend that they were entitled to have their defense of contributory negligence placed in a more concrete form before the jury than was done by the instructions given by the court. We do not agree to this, as we think the instructions the court gave for plaintiff and defendant were as specific and as concrete as either party was entitled to ask. This disposes of the assignments of error advanced by counsel for the defendant.

Looking into the record, we discover no error in the ruling of the trial court in the admission or exclusion of evidence. But there is an error of so grave a character appearing of record that we are compelled to notice it, although our attention has not been called to it by counsel. The first instruction, given by the court of its own motion, submits the question of negligence of the defendant, occasioned by the violation of the speed ordinance of the city; and the second instruction, as will be seen, counts upon the lack of ordinary care upon the part of the defendant,—common-law liability for negligence; the third instruction tells the jury that if they find from the evidence that plaintiff was negligent

in attempting to cross the street, yet if they further find that defendant's agent or servant in charge of the car, either saw or, by the exercise of ordinary care, could have seen the danger of plaintiff's position in time to have avoided the collision, but failed to exercise care and negligently allowed the car to collide with plaintiff and injure her, then plaintiff is entitled to recover; in brief, instructing on what is called the "humanitarian" or "last chance doctrine." In the recent case of Krehmeyer v. St. Louis Transit Co., 220 Mo. 639, 120 S. W. 78, our Supreme Court, in a case in which the instructions are very much in line with those here given, held that they were inconsistent, in that instructions on negligence of defendant are inconsistent with an instruction on the so-called humanitarian doctrine; that is to say, the Supreme Court holds that where a plaintiff relies upon the fact that he was not guilty of contributory negligence and that the injury was caused by the negligence of the defendant, then plaintiff is not entitled to an instruction on the so-called humanitarian doctrine, but that by invoking that doctrine, plaintiff confesses that he was guilty of negligence and therefore is not entitled to instructions authorizing a verdict in his favor on the finding by the jury that he was not chargeable with his contributory negligence, provided the defendant could have prevented the accident. That error was committed in this case, and it is reversible error.

For the reasons above given, the judgment will have to be reversed and the cause remanded. which is accordingly done, all concurring.