BISCHOFF v. PEOPLE'S RAILWAY COMPANY, Appellant.

Division One, March 24, 1894.

1. **Negligence**: APPARENT IMMINENT PERIL: DISCRETION AND JUDGMENT. Where one has been placed in a situation of apparent imminent peril by the negligence of another, in attempting to escape therefrom, he is not required to use the judgment and discretion that is demanded of him when not dominated by terror of impending danger.

2. ———: ———: ———. If, in such case, without having time to deliberate, and acting upon the instinct of self-preservation, and as a prudent person might be expected to act in the circumstances, he is injured by adopting a dangerous alternative, he may still recover from the one by whose negligence he has been impelled to act, although no injury would have resulted had no attempt to escape been made.

3. ———: ———: ———: JUMPING FROM STREET CAR. Where plaintiff's evidence, in an action against a street railway company for personal injuries, showed that she was injured by jumping from one of defendant's cable cars, upon which she was a passenger, while it was approaching a railroad grade crossing, when the gripman, after being repeatedly warned of the danger of a collision, not only failed to stop his train, which he could easily have done, but increased its speed for the purpose of making the crossing before the arrival of the approaching train, she was entitled to go to the jury upon the issue whether the negligence of defendant's servant was the proximate cause of her injury.

4. ———: RAILROAD: INSTRUCTION. An instruction, in an action against a street railway company for personal injuries, that defendant was bound to exercise toward the plaintiff, as a passenger on its cars, "a high degree of care, such as would be exercised by very prudent persons under like circumstances," and was liable for even the slightest neglect of its servants to use such care, was properly given.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*G. A. Finkelnburg* for appellant.

(1) The trial court erred in refusing defendant's instruction of nonsuit offered at the close of plaintiff's case and at the close of all the evidence in the case. The evidence failed to show negligence on the part of defendant's employees and did show that the negligence of the Missouri Pacific Railway Company's employees was the cause of the accident. *Kleiber v. Railroad*, 107 Mo. 240; *Maschek v. Railroad*, 71 Mo. 276; *Jackson v. Hardin*, 83 Mo. 175; *Hunt v. Railroad*, 89 Mo. 607; *Holman v. Railroad*, 62 Mo. 562; *Railroad v. Wallen*, 65 Tex. 568. (2) The court erred in not setting aside the verdict as against this defendant because it was apparent, in view of the evidence before the jury and the instructions given them by the court, that the jury disregarded said instructions (particularly defendant's instructions numbers 2 and 3), and also disregarded the evidence in rendering a verdict against the People's Railway Company. The verdict was directly against the law as laid down by the court. *Kleiber v. Railroad*, 107 Mo. 240. When the verdict is manifestly against the evidence and the instructions, the supreme court will interfere and reverse the judgment. *Ackley v. Staehlin*, 56 Mo. 558; *Hearne v. Keath*, 63 Mo. 84; *Schmieding v. Young*, 57 Mo. 78; *Whitsett v. Ransom*, 79

Mo. 258; *Cary v. Railroad*, 60 Mo. 209. (3) Every one driving a vehicle along a public street has a right, when approaching a railroad crossing, to rely on the signals which the railroad has provided as a warning to the public of the approach of trains. *Whalen v. Railroad*, 38 Fed. Rep. 15; *Shankenburg v. Railroad*, 46 Fed. Rep. 177; *Sweeney v. Railroad*, 10 Allen, 368; *Palmer v. Railroad*, 112 N. Y. 234; *Oldenberg v. Railroad*, 26 N. E. Rep. 1021; *Lunt v. Railroad*, L. R. 1 Q. B. 27; Beach on Contrib. Neg., p. 199; Wharton's Neg., sec. 337; Pierce on Railroads, 327; *Kennayde v. Railroad*, 45 Mo. 255; *Petty v. Railroad*, 88 Mo. 306. (4) Instruction number 1 on behalf of plaintiff requires a degree of diligence on the part of defendant not warranted by law. *Dougherty v. Railroad*, 97 Mo. 667; *Gilson v. Railroad*, 76 Mo. 283.

*J. W. Benstein*, *W. E. Jones* and *A. R. Taylor* for respondent.

(1) As shown in the statement, the evidence strongly supported the verdict, and it is really superfluous to present to the court authorities to support principles so often decided and so familiar to this court. That, if the plaintiff was, by the negligent act of the defendant carrier, placed in a position of apparent imminent peril, and in attempting to escape such peril jumped from the car and was injured, and if she acted with ordinary prudence in so taking such course, she can recover, though by remaining on the car she would have escaped injury, there is no longer any question. *Kleiber v. Railroad*, 107 Mo. 247. (2) The first point made by the appellant that the evidence fails to show negligence upon its part, is untenable, as shown by the evidence; none of the cases cited by appellant sustain this point. (3) The second point made for appellant

is, that the trial court should have set aside the verdict, because the jury disregarded instructions (2 and 3) given for the defendant, and the evidence. There was ample evidence for the jury to have found the verdict under this instruction. This very instruction as to what a party may assume, where the evidence is contradicting, has been condemned a number of times, and its propriety doubted, even where the matter presumed was a duty prescribed by statute law. *Myers v. City,* 108 Mo. 487, citing *Moberly v. Railroad,* 98 Mo. 183; *Rapp v. Railroad,* 106 Mo. 423. As to appellant's second paragraph of its second point, it is enough to say that an appellate court in the state of Missouri can not, as contended, set aside a verdict founded upon substantial evidence, without invading the province of the jury. And much less in such a case as this, where, if the court were sitting as jurors, it is submitted they would find, as the jury did in this case, that the weight of the evidence was with the plaintiff. It is vain to site authorities for such a well settled proposition. (4) To appellant's third point all law-abiding persons may agree, and we do agree. (5) The fourth and last point of contention is that plaintiff's instruction number 1 requires too high a degree of care of the carrier. If counsel had not overlooked the application in the instruction of the words criticized, to wit: "slightest neglect of defendant, if there was such neglect, to exercise such degree of care, if such neglect caused plaintiff's injury," etc., he would not criticize. *Gilson v. Railroad,* 76 Mo. 287, cited for appellant, says that the degree of care for which the carrier is bound, is the "utmost care and diligence of very cautious persons" —a much higher degree than required by this instruction. "A high degree of care, such as would be used by very prudent persons under like circumstances," etc. *Dougherty v. Railroad,* 97 Mo. 656. The courts

of Missouri and elsewhere have consistently sustained the degree of care (or a higher) laid down in the instruction. *Lemon v. Chanslor*, 68 Mo. 356; *Furnish v. Railroad*, 102 Mo. 442; *O'Connell v. Railroad*, 106 Mo. 488.

BRACE, J.—This is an action for damages for personal injuries in which plaintiff obtained a judgment in the St. Louis circuit court for $3,000, and the defendant appeals and assigns for error, the refusal of the court to sustain a demurrer to plaintiff's evidence, its refusal to give an instruction to find for the defendant at the close of all the evidence, the giving of instruction number 1 for the plaintiff, and in not setting aside the verdict because the jury disregarded instructions numbers 2 and 3 given for the defendant.

Instruction number 1 given for the plaintiff is as follows:

"1.    The court instructs the jury that, if the defendant by its servants in charge of its cars received the plaintiff as a passenger on said cars, then defendant was bound by its servants in charge of its cars to exercise a high degree of care, such as would be exercised by very prudent persons under like circumstances to carry plaintiff safely to her point of destination of defendant's line of railway. And defendant is liable for even the slightest neglect of defendant's servants, if there was such neglect, to use such care, if such neglect caused plaintiff's injury, and if plaintiff exercised ordinary care at the time of the injury."

Instructions numbers 2 and 3 given for the defendant are as follows:

"2.    If the jury find from the evidence that for years prior to this accident it had been customary, and that at the time of the accident it still was the custom of the Missouri Pacific Railway Company, its agents

and employees, to give warning of the approach of its trains to persons and vehicles about to cross its track at the intersection of Fourth and Poplar streets, and to give such warning by lowering its movable gates or barriers across Fourth street in time to prevent danger or collision; and if the jury further find that this custom was known to defendant's agents and employees as well as to the plaintiff and to the public generally, then the defendant's agents and servants are not to be charged with negligence from the mere fact (if the jury find such to be the fact) that they assumed the way to be clear and free from danger until such movable gates or barriers were lowered.

"3.  If the jury believe from the evidence that plaintiff jumped off the car from fear of impending danger, and if the jury further find that such fear was caused by the negligence or improper conduct of the watchman of the Missouri Pacific Railway Company and not by the negligence or improper conduct of the driver or conductor of the People's Railway Company, the plaintiff cannot recover against said People's Railway Company."

The undisputed facts are that at the time the accident happened the defendant was operating a line of cable cars running north and south on Fourth street, and the Missouri Pacific Railway Company was operating a steam railway along a track running east and west on Poplar street in said city; that at the intersection of these two streets for the protection of the traveling public the railway company maintained a moveable barrier consisting of two long poles on the east side of Fourth street, one on the north and one on the south side of its track.  These poles stood upright when the railroad track was clear and were lowered westwardly to a horizontal position across Fourth street when an engine or train was about to cross.  They

were managed by a watchman or gate keeper in the employ of the railway company and under its sole control. At night a red light was attached to the ends of the poles, which moved up and down with them. The accident occurred about half past 10 o'clock on the night of the sixteenth of May, 1890. The plaintiff's injuries were serious and permanent. At the time, an engine with headlight in front was approaching the crossing on the railway track on Poplar street. The plaintiff was a passenger on defendant's cable cars, going south on Fourth street, and approaching the crossing. Owing to the buildings the approaching engine could not be seen from the cable cars.

She gives the following account, in substance, of the occurrence: "When the cable cars were approaching Poplar street persons began to motion, and cries came for the gripman to stop, that a train was coming; several other cries came, but I did not see the men, but I seen a policeman waive, and I heard cries of 'Stop' that there was danger; I saw the poles coming down and the light of the engine shining on the track; at the same time the passengers began to jump, and then I got up to get out; at the same time I was turned right out on the street." She says that she does not remember whether she jumped or was thrown off; that the grip car was about half a block away, if not farther, from the Missouri Pacific Railway track when the cries and signals to stop were given; that she listened and looked to see if the gripman was going to stop; that she got up after the passengers began to rush, and she got up with the intention of jumping and that at the same time she was landed in the street.

The gate keeper, O'Brien, who was examined as a witness in behalf of plaintiff testified that he was watching the crossing of Fourth and Poplar streets; that he had been watching at that crossing about eighteen

months; that he was standing on the corner close to the crank of the gate at the time of the accident; these gates were about sixteen feet north of the Poplar street track; that when he first discovered the approach of the grip car it was at Almond street; that he discovered the grip car and the engine at the same time.    Almond street is the next street north of Poplar street running parallel with Poplar street.

"*Q*.   What did you do when you made the discovery of the approach of the engine and the approach of the grip car?   *A*.   I turned my head one way and another to see how they were situated, and I cried out at once "Stop, stop," to the grip car, and then I commenced to operate on the gates.

"*Q*. How far was the grip car when you gave the signals to the gripman to 'stop, stop?'   *A*. About Almond street, just turned from Almond street towards Poplar street."

Witness states that when he made this outcry he commenced turning the gate down; that they were down at the bottom, with the exception that sometimes they spring a little, more or less; that he cried out "stop" about twice or three times; does not know that anyone else did so.

"*Q*. What, if anything, did the gripman do when you made the first outcry and lowered the gate ?   *A*. He speeded up a little more, instead of slackening." On being asked how the car got passed the gate witness says:   "You see when I found they were in pretty close quarters, and I saw the engine slackening up a little, I let the poles spring up, and I let them through there, and they went through lively, too."

The witness then first saw the plaintiff in the street about fifteen feet north of the gate.   Three other witnesses who were standing near the gate keeper give substantially the same account of the occurrence,

their evidence tending to show that when the gate keeper commenced letting down the gate and cried out to "stop" the cable cars were sixty, eighty, one hundred or more feet from the crossing; that the outcry of the gate keeper was joined in by others; that the cable cars could not have passed under the poles if they had not been let up just as the cars came to them; that the movements of the cable cars were so persistent that one man cried out, "Let them break it." The evidence for the plaintiff was in some particulars strengthened by the evidence for the defendant.

R. R. Stunde, who was a passenger and a witness for the defendant, testified that he heard the shouting and saw people jump off the grip and off the car he was in; that he rose up on account of the shouting; it came from the side where the gate was; the shouting was "stop her," "stop her." Then the gripman took a firm hold on the cable and the train seemed to shoot forward with a lurch.

Mark Hudson, another passenger and witness for defendant, testified that he heard the shouts immediately before the gates were lowered; could not say whether the gripman slacked up or took a firm hold on the cable; the car went right along; that when he saw the poles coming down he knew there was danger.

The manager of defendant's railway was also called as a witness for defendant, from whose evidence it appears that the cable cars at this place could have been stopped within about twenty-five feet. He also testified that if the gripman had been warned by the watchman sixty, eighty or one hundred feet away by outcries, and notwithstanding these outcries he should run his cars right down and cross that track he would regard the action as highly imprudent.

I. It would seem to require no argument to demonstrate the correctness of the conclusion reached by

this expert and practical witness as to the culpable negligence of a gripman who would so act under such circumstances; and that, with the superadded fact that the position of the barrier, although not entirely down, was in itself also a warning of danger, was just the case which, at the close, the evidence tended to make out for the plaintiff, and which entitled her to go to the jury upon the issue of the defendant's negligence.

It is settled law "that, if one, by the negligence of another, has been placed in a situation of apparent imminent peril, he is not required, in attempting to escape therefrom, to use the judgment and discretion that is required of him when not dominated by terror of impending danger; and if, without having time to deliberate, and acting upon the instinct of self-preservation, and as a prudent person might be expected to act in the circumstances, he is injured by adopting a dangerous alternative, he may still recover from the one by whose negligence he has been impelled to act. This is true, though no injury would have resulted had no attempt to escape been made." *Kleiber v. People's Railway Co.*, 107 Mo. 240.

In that case the following rules were deduced from the authorities: "*First*, the peril or alarm must have been caused by the negligence of the one against whom indemnity is sought; *second*, the apprehension of peril, from the standpoint of the injured person, must have been reasonable, and, *third*, the appearance of the danger must have been imminent, leaving no time for deliberation. On the other hand, the danger must be judged by the circumstances as they appear and not by the result." Applying these rules to the case in hand, there can be no doubt that the evidence for plaintiff, if believed, brought her case strictly within their requirements, and she was entitled to go to the jury on

the issue whether the negligence of defendant's servant was the proximate cause of her injuries. The defendant did not stand on its demurrer to the plaintiff's evidence, and can not complain of the overruling of that demurrer, and the court committed no error on the whole evidence in refusing the instruction for a nonsuit.

II. While instruction number 2 given for the defendant is obnoxious to criticism for which the defendant ought not to complain, the verdict is not in conflict with the instruction, as the fact of the gate not having been lowered, if so found, constitutes but one item of many detailed in the evidence, upon which the verdict might have been predicated. Instruction number 3 given for the defendant simply told the jury that if they found that the sole cause of plaintiff's injury was the negligence of the servant of the railway company then plaintiff could not recover. We can not see wherein the finding of the jury was against the law as declared in this instruction. It was against the fact therein hypothecated, and there was ample evidence to to sustain their finding. The court committed no error in refusing to set aside the verdict as against the law of the case as declared by the court.

III. Instruction number 1 given for the plaintiff is not very happily worded, but an analysis of it shows that the defendant was to be held only for neglect to use such a degree of care as would be used by very prudent persons under like circumstances.

We find no reversible error in the matters assigned, and the judgment is affirmed. All concur.