PAULA F. BLYSTON-SPENCER, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

Springfield Court of Appeals, December 5, 1910.

1. JURY: Serve Only Once a Year. Section 7361 of Revised Statutes of 1909, provides that a juror is to serve only once a year, and that no person should be required to serve as juror, either grand, petit or special, more than once a year, but it has been held that this section confers a special privilege on the juror, and does not forbid his being summoned. It is grounds for challenge for cause, and is waived if the juror is not challenged peremptorily.

2. ———: ———. There is an apparent conflict between sections 7353, Revised Statutes 1909, which authorizes the court in cities of 100,000 or more inhabitants, to determine how long

a juror shall serve, and section 7342, which provides that it shall be the duty of every court of record to excuse from service as a juror, any person who has served on any jury within twelve months *next preceding*; but these sections are construed to mean that the law will exempt the person from jury service, provided he has served as a juror within twelve months prior to the time when he *began service* as a juror on such regular panel.

3. **STATUTORY CONSTRUCTION.** All provisions of law relating to one subject should be considered in determining the meaning of any one particular portion thereof, and such a construction should be given to the portion under consideration, as will keep all the provisions of law on the same subject in harmony and give effect to all when such construction is possible.

4. ————. Where the provisions of law are merely contradictory to each other, or the literal construction of a single section would conflict with any other following or preceding it, and with the entire scope or manifest intention of the act, it is the duty of the court, if it be possible, to harmonize the various provisions with each other, and to effect this it may be necessary to depart from the literal construction of one or more sections.

5. **STREET RAILWAYS:** Negligence: Excessive Speed: Injury to Traveler. As plaintiff was about to cross a street car track at night, she saw an automobile and a street car coming towards her from the east, and she stepped out of the way on to a parallel track and while so waiting she looked towards the west but saw no car coming from that direction. While she stood there a car came around the corner from the south and turned east and was running, according to the evidence, at the rate of from twenty to twenty-five miles an hour, and greatly in excess of the speed ordinance. While plaintiff was looking towards the north, this car came upon her and although she attempted to get out of the way she was struck by this car and injured. The evidence on behalf of the plaintiff is examined and *held* sufficient to sustain the allegation of negligence in her petition.

6. **HUMANITARIAN DOCTRINE:** Instructions: Inconsistent Theories: Negligence: Street Railways. Plaintiff was injured by being struck by a street car. The appellant objected to instructions given on behalf of plaintiff on the grounds that they submitted inconsistent theories in submitting to the jury the question of defendant's negligence in exceeding the speed ordinance, which required the finding that plaintiff was exercising ordinary care, and also by allowing a recovery on the humanitarian doctrine, notwithstanding plaintiff's contributory

negligence. The question of what is the last opinion of the Supreme Court on this point is considered, and the case of Spencer v. Transit Co., 222 Mo. 310, which in effect holds that the instructions are not inconsistent, is followed.

7. **NEGLIGENCE:    Violating City Ordinance:    Municipal Corporations.**    An ordinance of the city of St. Louis prohibited the running of street cars within a certain district at a rate in excess of fifteen miles per hour. *Held*, that running a street car in excess of the rate fixed by the ordinance was negligence *per se*.

8. **JURY QUESTION:    Negligence:    Humanitarian Doctrine.** Plaintiff was struck by a street car and was permitted to recover under an instruction submitting the humanitarian doctrine. The evidence is examined and held that it was clearly a question of fact for the jury, whether the motorman actually discerned plaintiff's situation and could have stopped the car after he saw the peril of plaintiff in time to have averted the accident.

9. **STREET RAILWAYS:    Negligence: Duty of Motorman.** The motorman must be assumed to know approximately the speed of his car, and it is his duty to keep a lookout for persons on the track, especially at places where he may reasonably expect persons to attempt to cross, and he must anticipate the danger arising from the consequences of his own negligence.

10. **NEGLIGENCE: Imminent Peril.** If one, by the negligence of another, has been placed in a situation of apparent imminent danger, he is not required in attempting to escape therefrom, to use the judgment and discretion that is required of him when not dominated by terror or impending danger, and if, without having time to deliberate, and acting on instinct of self-preservation, as a prudent man might be expected to act under the circumstances, he is injured by adopting the dangerous alternative, he may still recover from the one by whose negligence he has been impelled to act; although no injury would have resulted had no attempt to escape been made.

11. ———: ———: **Contributory Negligence: Street Railways.** Plaintiff, while crossing a street, stopped to allow a street car and automobile coming from one direction to pass, and while so waiting another street car came from the opposite direction. Plaintiff was in a pocket with danger on both sides, and in attempting to extricate herself, stepped in front of the latter car. *Held*, that she was not guilty of contributory negligence, and that injuries might have resulted if plaintiff had remained in the space between the two sets of tracks.

12. **INSTRUCTIONS: Damages: Limiting Recovery to Amount Claimed.** In a suit for damages for personal injuries it is reversible error to submit an instruction permitting the jury to assess damages for nurse hire, medicines, doctors' bills, etc.,

Blyston-Spencer v. Railroad.

without limiting the amount of recovery of these items to the amount claimed in the petition.

13. ————: ————: Limiting Recovery to Injuries Alleged. It is improper in an instruction on the measure of damages, to allow a recovery for impairment of plaintiff's health, when no such charge is contained in the petition. A recovery of damages ought to be limited to the specific injuries stated in the petition.

14. INSTRUCTIONS: Contributory Negligence: Humanitarian Doctrine. In a suit for damages for personal injuries caused by plaintiff having been struck by a street car, a refused instruction requested by defendant, submitting the question of plaintiff's contributory negligence in failing to look and listen for the approach of cars, is examined and *held* that its refusal was proper, first, because the main proposition was covered in another instruction, and second, because it would have been improper to have given it, without qualification, along with an instruction submitting the humanitarian doctrine.

15. PRACTICE: Conduct of Counsel. Appellant complained of the conduct of plaintiff's counsel in charging appellant corporation with infamy and of the court's failure to rebuke or reprimand the counsel upon request. *Held*, that the remarks were improper, although appellant's counsel was partly to blame in attempting a defense of the character of his client before it had been attacked.

16. PLEADING: Negligence. A petition in a suit for damages for personal injuries is criticised because of the allegation to the effect that the negligence alleged "thereby directly *contributed* to plaintiff's injury." Under the facts in this case it was suggested the allegation should be that the negligence *caused* the injury.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

REVERSED AND REMANDED.

*Glendy B. Arnold* for appellant; *Boyle & Priest* of counsel.

(1) The court erred in overruling defendant's challenges of jurors Marshall, Metzner, Orr, Penseneau and Hennessy, on the ground that each of them had served on a jury in said court within twelve months

next preceding the trial of this case. Williamson v. Transit Co., 202 Mo. 365; R. S. 1909, sec. 7342. (2) The court erred in giving to the jury plaintiff's second instruction. Negligent speed and the humanitarian doctrine are inconsistent theories. Krehmeyer v. Transit Co., 223 Mo. 650; Hough v. Car Co., 123 S. W. 83. (3) This instruction is erroneous for the further reason that the speed of the car was not shown to have been either a proximate or remote cause of the collision. Schmidt v. Transit Co., 140 Mo. App. 182; Heinzle v. Railroad, 182 Mo. 559; King v. Railroad, 211 Mo. 1; Frank v. Transit Co., 112 Mo. App. 506. (4) Plaintiff's instruction on the measure of damages is erroneous, because: (a) It authorizes damages for "the impairment of plaintiff's health," when no such charge is contained in the petition. Moore v. Transit Co., 226 Mo. 698. (b) It authorizes damages for doctors' bills, medical attention and nurse hire beyond the amount claimed in the petition. This was reversible error, and cannot be cured by a remittitur. Smoot v. Kansas City, 194 Mo. 522; Heinz v. Railroad, 143 Mo. App. 38.

*Sterling P. Bond* for respondent.

(1) Appellant's second point is not well taken for the reason that respondent's case was not submitted to the jury on the humanitarian doctrine. Appellant does not criticise the form of this instruction. It is supported by the cases of Riska v. Railroad, 180 Mo. 184; Eckard v. Transit Co., 190 Mo. 593; Deitring v. Transit Co., 109 Mo. App. 524. The instruction is not subject to the criticism on the ground that the speed was not shown to have been a cause of the collision, as appears from the evidence in the case. Deitring v. Transit Co., 109 Mo. App. 539; Murray v. Transit Co., 108 Mo. App. 506. (2) There is nothing in appellant's criticism (a) point 3. Nor does the authority cited, Moore v. Transit Co., 226 Mo. 698, sustain appellant's conten-

tion. To support respondent's position respondent refers the court to her petition and to the authorities to sustain it, of Cobb v. Railroad, 149 Mo. 140; Groce v. Railroad, 150 Mo. 296; McCarthy v. Transit Co., 109 Mo. App. 137. (3) All instructions given by the court whether for the plaintiff or defendant, must be taken and read together, and if, being so read, they are inconsistent and not calculated to mislead the jury the judgment should be permitted to stand. Hart v. Railroad, 55 Mo. 476; Whalen v. Railroad, 60 Mo. 323; Haworth v. Railroad, 94 Mo. App. 215; Dickson v. Railroad, 104 Mo. 49; Czezewzka v. Rialroad, 121 Mo. 215; Panjiris v. Hartman, 196 Mo. 539; Moore v. Mining Co., 105 Mo. App. 709; Gordon v. Burris, 153 Mo. 332.

STATEMENT.—This was an action commenced by the plaintiff against the defendant, a street railway company operating street car lines in the city of St. Louis. The action was for damages growing out of injuries plaintiff sustained by reason of a collision with one of defendant's street cars at the intersection of Delmar and Bayard avenues in said city. The negligence charged in the petition is (1) the failure of defendant's servants to keep a vigilant watch for plaintiff and to stop the car in the shortest time and space possible upon the first appearance of danger to the plaintiff, and (2) in running the car at a rate of speed in excess of fifteen miles an hour, alleged to have been in violation of a certain ordinance of the city of St. Louis. Among other items of damages claimed in the petition, appear the following: ''Hospital bills in the sum of $71.70; nurse hire, $39.40; ambulance charge, $10; additional expenses in nurse hire, $80; doctor's bills, $230; occulist's bills, and expenses for eye-glasses, $35.'' The prayer was for twenty-five thousand dollars damages. The answer was a general denial coupled with a countercharge that plaintiff's injuries were caused by her own negligence in passing onto the track

of the defendant dangerously near an approaching car. The reply was a general denial. Upon trial, plaintiff obtained judgment for the sum of three thousand dollars, from which the defendant duly perfected its appeal to this court.

The evidence offered by the respondent tended to support the charges of negligence contained in her petition. Her own testimony tended to show that at the time of the accident she was crossing from the south side to the north side of Delmar avenue on the west walk of Bayard avenue at the intersection of the two streets; that it was about 8:30 in the evening and the streets were lighted and she could see two or three blocks in either direction; that Delmar avenue at this point runs east and west, and that Bayard avenue, running north and south intersects it at a right angle; that the streets are level and straight at this point. She stated that when she started to cross the street, she looked both ways, east and west, along Delmar avenue, and listened for street cars; that at this time, she saw a car coming from the east, but that there was none in sight coming from the west; that it was about four hundred feet to Walton avenue, east, and that this street car coming toward her from the east was about one hundred and fifty feet west of Walton avenue; that at about the same time, she saw an automobile on the north side of this car and just behind it coming in the same direction; that when she reached the space between the two tracks, she saw she could not get across, and, in order to allow the street car and automobile to pass, stepped on the north side of the east-bound track close to the north rail; that when she stopped there, waiting for the west-bound car and the automobile to pass, she again looked toward the west for a car but that no car was in sight coming from that direction. But, unnoticed by her, while she stood there, a car from the south came down Euclid avenue, a street running north and south and parallel with Bayard avenue; this

car, called the Taylor avenue car, came around the corner on the south track of Delmar avenue. It was running, according to the evidence, at the rate of from twenty to twenty-five miles an hour, and while plaintiff was looking to the north with her side toward the approaching car from the ·west, it ran her down. The distance, west, from where plaintiff stood and was struck to the point where the Taylor avenue car came onto the south track of Delmar avenue was about four hundred feet. Plaintiff stated that she stood between the tracks for ten or fifteen seconds to enable the west bound car and the automobile to pass in order that she might pass on north; that at this time, something attracted her attention and she looked up and saw the Taylor avenue car coming from the west and that it was then only twenty-five or thirty feet away. She was in a sort of a pocket; cars were approaching her from both sides; she claims she attempted to get out of the way; she stated that she could not go forward, north, because of the car and automobile approaching from the east; that she tried to go backward and was caught by the Taylor avenue car, coming from the west, receiving her injuries. The testimony tended to show that she was rendered unconscious; that her skull was fractured, and her face, back, shoulders and limbs bruised and injured; that her right arm was injured and her left ankle sprained; that she lost the use of one of her eyes for six months, had paralysis of the sensory nerves in areas on the right side of her body, was unconscious for two or three days after the accident, and was confined to her bed for about two months.

NIXON, P. J.—I. Appellant at the outset assigns as error the action of the trial court in overruling appellant's challenges of jurors Marshall, Metzner, Orr, Penseneau and Hennessy, on the ground that each of said jurors had served on a jury within twelve

months next preceding the trial of this case. The evidence showed that each of these jurors had been summoned to come to court and serve for one week, beginning on Monday of the week in which this case was tried, and that they had sat upon juries during the week subsequent to the Monday when they began to serve, but that they had not sat upon any jury within a year prior to the time their service as jurors began; that is, on Monday of the week in which this case was tried.

Section 7353, Revised Statutes 1909, concerning juries in cities of 100,000 inhabitants or more in this state, provides that each of the courts therein referred to "may direct from time to time the number of jurors to be summoned for said court, and how long they shall be summoned before their appearance shall be required, and how long they shall serve." The panel of jurors which tried the present case had been required by the court, under the authority granted by this section, to appear on the preceding Monday and serve for a period of one week. Section 7361, Revised Statutes 1909, provides that a juror is to serve only once a year, and that no person should be required to serve as a juror, either grand, petit or special, more than once a year. But it has been held that this section confers a special privilege on the juror, and does not forbid his being summoned. It is ground for challenge for cause, but is waived if the juror is not challenged peremptorily. [Williamson v. St. Louis T. Co., 202 Mo. 345, 100 S. W. 1072.] Section 7342, Revised Statutes 1909 (in the same chapter), provides what persons shall be exempt from jury service in such cities, and contains the following provision: ". . . And it shall be the duty of every court of record in said city to excuse from service as a juror every person who, being examined on the voir dire, shall appear to the court to be a person whose name ought not to have been placed upon the jury list under the pro-

visions of this article, or who has served on any jury in any court in this state within twelve months next preceding, if challenged for that cause, by either party of the suit; and the court may excuse such person without challenge by either party.''

It will be seen that section 7353, which authorizes the court in which the jury is to serve to determine how long the jurors shall be in attendance or how long they shall serve, is apparently in conflict with section 7342 which provides that it shall be the duty of every court of record in said city to excuse from service as a juror any person who has served on any jury in any court in this state within twelve months *next preceding*. The respondent contends that the service referred to in section 7342 as ''next preceding'' means that where a juror is summoned on a regular panel within twelve months prior to the date on which his service on said regular panel *is to commence*, he may be challenged for cause. The appellant contends that the service referred to as ''next preceding'' means within twelve months prior to the date on which the juror is actually called into the jury box to serve as a juror. The law of interpretation of statutes is well established that all provisions of law relating to one subject should be considered in determining the meaning of any particular portion thereof, and such a construction should be given to the portion under consideration as will keep all the provisions of law on the same subject in harmony, and give effect to all, when such construction is possible. [Macke v. Byrd, 131 Mo. 682, 33 S. W. 448; City of Westport ex rel. v. Jackson, 69 Mo. App. 148; Litson v. Smith, 68 Mo. App. 397.] Where the provisions of law are seemingly contradictory of each other, or the literal construction of a single section would conflict with any other following or preceding it and with the entire scope of manifest intent of the act, it is the duty of courts, if it be possible, to harmonize the various provisions with each other, and to effect this,

it may be necessary to depart from the literal construction of one or more sections. [State to the use of Rosenblatt v. Heman, 70 Mo. 441.]

Applying these general principles to the sections of the statutes under consideration—which are *in pari materia*—in order to collect the legislative intent, we think there can be no reasonable doubt as to their proper construction, and that the appellant's contention should not be sustained. The evident meaning of the several enactments, considered together, is that in case a juror is called upon the regular panel to perform jury service for a specified length of time (in this case, one week), the law would only exempt him from such service provided he had served as a juror within twelve months prior to the time when he *began service* as a juror on such regular panel. Otherwise, the sections of the law, when all considered together, are conflicting and irreconcilable. The manifest purpose of the enactments was not to burden the juror with unnecessary service, but to distribute such burdens generally among all citizens qualified for jury service.

II. The court, at plaintiff's request and over defendant's objection, gave the following instruction as to the negligence of the defendant in running its car at a rate of speed in excess of fifteen miles an hour:

"2. . . . and if the jury believe and find from the evidence that the place at which plaintiff was injured was in that portion of the city described as not being the central district in the city ordinance read in evidence; that just before and at the time said car ran against said plaintiff and injured her, the said car was running at a rate of speed in excess of fifteen miles an hour; and if the jury further find from the evidence that such excessive rate of speed of said car directly caused the injuries to the plaintiff; and if the jury further find and believe from the evidence that before going upon said track and whilst passing over,

upon and near said track, the plaintiff used ordinary care in looking and listening for the approaching car and to avoid injury to herself, then the plaintiff is entitled to recover and your verdict should be for the plaintiff."

Of its own motion the court gave the following instruction:

"The jury are instructed that it was the duty of the plaintiff before crossing the defendant's electric railway track, to exercise ordinary care to look and listen for approaching cars and to exercise ordinary care to avoid coming into collision with such cars, and if you find from the evidence in this case that plaintiff failed to so look and listen before stepping on the defendant's track, and that by so doing she might have observed the approaching car, and by the exercise of ordinary care avoided the collision, then your verdict must be for the defendant even though you believe defendant was guilty of negligence, unless you further find that the motorman could have stopped the car in time to have avoided the collision by the use of the means at his command and consistent with safety to the car and to the passengers in the car, after discovering the danger to plaintiff, or could have discovered such danger by keeping a vigilant watch."

Appellant assigns as error that these two instructions rest upon inconsistent theories. It will be seen that instruction No. 2 submits to the jury the question of the defendant's negligence occasioned by the speed ordinance of the city, while the latter instruction, which the court gave of its own motion, was to the effect that the contributory negligence of the person injured would not prevent a recovery when such negligence was known to the party causing the injury and the injury could have been avoided by the use of reasonable care. Appellant's contention is that the instructions are inconsistent in that instructions on neg-

152 App.—9

ligence of the defendant are necessarily inconsistent
with instructions on the so-called humanitarian doc-
trine; that where plaintiff relies on the fact that he
was not guilty of contributory negligence, and that
the injury was caused by the negligence of the defend-
ant, then plaintiff is not entitled to an instruction on
the humanitarian doctrine, because by invoking that
doctrine plaintiff confesses that he was guilty of neg-
ligence and that he should recover notwithstanding
such negligence. In support of this view of the law,
we are referred to the case of Krehmeyer v. St. Louis
T. Co., 220 Mo. 639, 120 S. W. 78. The opinion in that
case was delivered by WOODSON, J., in which Fox and
BURGESS, JJ., concurred. Judge VALLIANT wrote a dis-
senting opinion, in which GANTT and LAMM, JJ., con-
curred, declaring that the two positions were not in-
consistent, and that instructions submitting both the-
ories are proper. It is now urged that the Krehmeyer
case is authority and settles the doctrine in this state
in favor of the law as declared by Judge WOODSON.
Judge GRAVES, in his separate opinion in that case,
said: "I concur in the result reached by my Brother
WOODSON, but for reasons somewhat different; that is
to say, I do not follow all of his reasons." As said
by this court in the case of Childress v. Southwest
Missouri R. Co., 141 Mo. App. 667, 679, 126 S. W. 169,
173, Judge GRAY delivering the opinion,—"If he did
concur with WOODSON, he has since changed his mind,
In Spencer v. Transit Co., 121 S. W. 108, Judge
GRAVES wrote the opinion. In that case instructions
were given submitting both issues and among these
instructions is the following: 'If the jury find from
the evidence that Mrs. Spencer took the same degree
of care of the child on the occasion in question as a
reasonably prudent person ordinarily would under the
same or similar circumstances, then she was not guilty
of such contributory negligence as would defeat this
action; and even if the jury believe that she did not

exercise reasonable care and that the child escaped from her grasp and ran across the railroad track, as shown in the evidence, yet this would not defeat plaintiff's recovery, if you believe that the motorman, without seeing the child either on the track or moving toward it, and on the first appearance of danger of such child, failed to stop the car within the shortest time and space practicable consistent with safety of the passengers on board the car, and that such failure by said motorman occasioned the death of said child.' Speaking of this instruction, Judge GRAVES said: 'We see no error in this instruction. It reiterates the well-recognized humanitarian rule.' " Judge GRAY, resuming his consideration of the Childress case, then said: "If the decision of this case hinged upon this question, we would be at a loss to know what to do. What is the last decision of the Supreme Court upon the subject? We have an opinion by three judges, dissented from by three judges, and one judge concurring in doubt and a subsequent opinion by him declaring the law as found in the dissenting opinion. This point is a very material one, and is in nearly every case wherein damages are sought to be recovered from a street car company by injuring a child in the street, and it is to be regretted that the judges of the Supreme Court are unable to agree on a clear and well-defined declaration of the law relating thereto."

In the late case of Shipley v. Metropolitan St. Ry. Co., 144 Mo. App. 7, 26, 128 S. W. 768, 774, the Kansas City Court of Appeals said: "The most serious objection offered to this instruction is that it submits the hypothesis first, that the peril of the decedent was created by the sole negligence of defendant without the aid of contributory negligence, and, second, that the death was caused by the negligence of the defendant under the humanitarian doctrine. The argument is that these hypotheses are so inconsistent they cannot be considered in the same case and the cases

of Hof v. Transit Co., 213 Mo. 467, and Krehmeyer v. Transit Co., 220 Mo. 639, are cited in support of the argument. Of course, if the Supreme Court has so decided this question that would be an end to all discussion here. We would follow the Supreme Court, regardless of what our own views might be, but we do not understand the Supreme Court have decided the question as defendant argues they have. The Krehmeyer case is the last decision dealing with the subject to which our attention has been directed. The majority opinion in that case, written by WOODSON, J., and concurred in by BURGESS, FOX and GRAVES, JJ., does contain expressions which lend support to the contention of defendant. But there was a dissenting opinion filed by VALLIANT, J., and concurred in by GANTT and LAMM, JJ., which took sharp issue with the majority opinion. The concurrence of Judge GRAVES with the majority was by a separate concurring opinion in which he stated that he concurred in the result but did not follow all the reasoning of his brother WOODSON. An examination of that opinion discloses that judge GRAVES did not indorse the view that the issue of whether the peril was produced by the sole negligence of the defendant and that of whether the defendant was negligent under the humanitarian doctrine are so inconsistent that both may not be contested in one action. Consequently the judges by a majority of four to three were against the doctrine now pressed by defendant and which, as we have said, finds some support in the opinion of WOODSON, J.''

We are disposed to accept the opinion in the case of Spencer v. Transit Co., 222 Mo. 310, 121 S. W. 108, as declaring the law as it should be applied to the present case. In the case of Hough v. St. Louis Car Co., 123 S. W. 83, decided by the St. Louis Court of Appeals, the decision in the Spencer case, though subsequent to the Krehmeyer case, seems to have escaped the attention of that court.

The city ordinance, referred to in the instructions, known as the vigilant watch ordinance, is as follows: (The 4th rule): "The conductor, motorman, gripman, driver, or any other person in charge of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible." (Sec. 1865) : *"Regulations as to Rate of Speed.*—No car shall be drawn or propelled at a greater rate of speed than at the rate of ten miles per hour in that part of the city bounded by the Mississippi river on the east, Arsenal street on the south, and Grand avenue and its prolongation to said river on the west and north, inclusive of both said streets, said district so bounded to be known as the central district; and no car shall be drawn or propelled at a greater speed than at the rate of fifteen miles per hour in that part of the city not included in said central district above bounded and described, to be known as the outer district."

The duty of motormen and others in charge of street cars, under this legislation as to vigilant watch, is written so large and so clearly that no judicial construction is required to interpret its beneficent provisions. Its purpose was manifestly to require the keeping of a vigilant watch by the motorman for all persons on foot, whether on the track or moving toward it, and, on the first appearance of danger to such persons, required that the car should be stopped in the shortest time and space possible. In large cities, especially, where considerable bodies of people comprising all classes, young and old, stalwart and feeble, are continually passing over and along the streets on which street cars are operated, it is to be anticipated that there will be people among such a throng more or less unconscious of their situation, and perhaps in-

different to the dangers surrounding them. This ordinance in its spirit and language clearly extends a protection to such classes and specifically enjoins a duty upon those in charge of street cars, upon the first appearance of danger to persons on the track or moving toward it, to stop the car in the shortest time and space possible. The motorman's duty is not conditioned on the negligence of the plaintiff, but upon the appearance of danger, whether such danger is caused by the negligence of the person injured or not. While it is true that ordinarily a motorman is not required to stop his car every time he sees a person on or near the track ahead of the car and he has the right to assume until the contrary appears that others will act with ordinary care, yet it is his duty to give diligent heed to such persons, their appearance, conduct, etc., to ascertain whether such persons are in a dangerous position and whether they are conscious of the approaching car, and to stop his car within the shortest time and space possible whenever such persons are apparently in danger. It was necessary for the plaintiff, under the ordinance, in order to recover, to affirmatively prove that the motorman or others in charge of the Taylor avenue car could in the discharge of this duty, by keeping a vigilant watch, have discovered the apparent danger to the plaintiff in time to have stopped the car and averted the accident. As to the first count in plaintiff's petition, the only function of the plea of contributory negligence would be that of general denial. In any event, the principles of law announced in the Krehmeyer case would have no application to cases arising under the ordinance in question except as stated.

It is further contended by appellant that the instruction (No. 2) in regard to the speed of the car was erroneous for the reason that the speed of the car was not shown to have been either the proximate or remote cause of the collision. It is to be noted that

the rate of speed at which cars could run at the place of the accident, as fixed by the ordinance, was not to exceed fifteen miles per hour and that the car was being driven at the rate of from twenty to twenty-five miles an hour at the time of the collision,—a prohibited rate of speed, which was negligence *per se.* [Keim v. United Ry. & T. Co., 90 Mo. 314, 2 S. W. 427; Weber v. K. C. Cable Ry. Co., 100 Mo. 194, 12 S. W. 804, 13 S. W. 587.]

The two principal actors upon the scene at the time of the accident were the plaintiff and the motorman on the Taylor avenue car, both of whom were thoroughly familiar with the place where the accident occurred. The plaintiff's residence was on the south side of Delmar avenue, a short distance from the intersection of Delmar and Bayard avenues; she had resided there three years and hence was familiar with the surroundings and the operation of the street cars in that vicinity. The motorman in charge of the Taylor avenue car which was driven against plaintiff's person was a man of wide experience as a motorman, having run cars over Delmar and Euclid avenues for about seven years. The plaintiff, according to her own statement of her case, at the time she left the curb on the south side of Delmar avenue to pass across Delmar, going north, looked west, in the direction of Euclid avenue, for the purpose of seeing whether a car was approaching from that direction on Delmar; that she could see three blocks to the west and that at that time there was no such car in sight. She stated that she then passed about eighteen feet north, to a point between the double tracks on Delmar, and stood in the space between the two sets of tracks; that as she entered such space, she again looked west to ascertain whether a car was approaching from that direction, but that no car from the west was then in sight; that she remained standing at that place, just outside the north rail of the south track on Delmar, looking

north or northeast with her attention directed to the car coming from the east near Walton avenue, perhaps two hundred feet east of where she stood; that she also saw an automobile just north of that car and a little behind it coming in the same direction and moving very rapidly; that she concluded not to cross in front of the two; that she had stood there some ten or fifteen second when her attention was drawn by something toward the west; that the Taylor avenue car was then approaching from the west at the rate of from twenty to twenty-five miles an hour and was within twenty-five or thirty feet of plaintiff at the time she first saw it; that, seeing her condition, with a car and an automobile shutting off her passage to the north, she tried to back southward and was struck by the Taylor avenue car, and received her injuries. The motorman on the Taylor avenue car, as his car passed from Euclid avenue onto Delmar avenue and commenced its rapid passage directly toward the place where plaintiff was standing, if he was at his post and discharging the duties imposed on him by the ordinance by keeping a vigilant watch for persons on foot on or near the track, necessarily must have seen the dangerous position in which plaintiff was situated at that time. He stood on the front platform of his car, two feet above the street, and with the plaintiff in plain view, not more than four hundred feet east, should have known the condition in which she was placed. No object was there to obstruct his view. With his professional knowledge of the movement of people at street crossings, gained by seven years experience as a motorman, he should have taken in the whole situation and have known that the plaintiff, standing in the space between the two sets of tracks, was not waiting to take passage on either of the approaching cars. He saw, or should have seen, the perilous position in which the plaintiff was situated. He saw, or should have seen, that her attention was drawn

toward the north or northeast and her side was turned towards the car approaching from the east, and from her position he should have known that she was so close to the track of his car that there would be a collision unless she moved. In this connection, there was evidence that the Taylor avenue car had a modern and first-class equipment and could have been stopped in from forty to fifty feet. Under these circumstances, we think it was clearly a question of fact for the jury whether the motorman actually discerned plaintiff's situation, and could have stopped the car after he saw the peril of plaintiff in time to have averted the accident. Certainly, the jury would well consider the question of speed of the car as being the direct or proximate cause of the collision, especially in connection with plaintiff's evidence that she was struck by the south wheel of the street car. The probabilities of a collision between a moving car and a pedestrian passing in front of it and attempting to cross and choosing the distance in which he may safely cross in front of such a car will depend upon his knowledge of the speed with which the car is approaching him. There is evidence in this case showing that the car was running at the time of the accident from twenty to twenty-five miles an hour. This was in the nighttime, in a thickly settled portion of the city. With a car running at such unusual speed, it was not unlikely that persons about to cross the track might choose a place so near the track as to make a collision probable, and yet, from their point of view, it might seem entirely reasonable and safe for them to cross at the place selected, and their failure to perceive the danger might be entirely due to the excessive rate of speed of the car and to their inability in the darkness to detect it and comprehend the shortness of the time required for the car to pass over the distance between it and the place selected for the crossing. The motorman must be assumed to know approximately the speed

of his car, and under such circumstances, and while running at such excessive speed, it cannot be said as a matter of law that he ought not reasonably to have expected that persons might attempt to cross the track at a point which in fact would be dangerously near but which to them would not appear so. The circumstances might be such as to charge him with this likelihood. Due care would require him in that case to anticipate such probability arising from the consequences of his own negligence. [Bresee v. Los Angeles T. Co., 5 L. R. S. (N. S.) 1059.] The culpability of the motorman in this case could not be overlooked by the jury. He had a right to know, as it was his duty to know, the perilous condition in which the plaintiff was placed, as well as her utter obliviousness to the danger from his approaching car. He had a right to know that if she remained standing where she was she would certainly be brought in collision with his car, and that when she did discover his approach, as he might have anticipated, it would then be too late for her to escape injury. In the position where she was placed, she could not go forward; if she did, the west-bound car or automobile would strike her; if she remained between the tracks, she was likely to be struck by both the car approaching from the east and that approaching from the west; if she tried to go backward, which was the effort she made, she was likely to be struck by the Taylor avenue car. The motorman should have seen that she was between the devil and the deep sea, and between them was sure to receive serious injuries. And yet, over an open and lighted street, in plain view, and with full knowledge of her dangerous condition, and of her unconsciousness of danger from his car, he drove the car forward at an excessively dangerous rate of speed in direct violation of the city ordinance and directly over her person and never made an effort to check his car until after the injury had been accomplished.

Under these circumstances, we think the jury had a right to infer that he was guilty of negligence and might have discovered her peril and by the exercise of proper care have prevented the injury, as the law required him to do.

It is contended, however, that the plaintiff by her own negligence in going upon the south track in front of the approaching car was the cause of her own injuries. The reply to this is that the motorman on the Taylor avenue car, during the time it was passing over the space of some four hundred feet, if he had kept vigilant watch, should have known the peril she was in. If one, by the negligence of another, has been placed in a situation of apparent imminent danger, he is not required, in attempting to escape therefrom, to use the judgment and discretion that is required of him when not denominated by terror or impending danger. And if, without having time to deliberate, and acting on the instinct of self-preservation, as a prudent person might be expected to act in the circumstances, he is injured by adopting the dangerous alternative, he may still recover from the one by whose negligence he has been impelled to act, although no injury would have resulted had no attempt to escape been made. [Kleiber v. People's Ry. Co., 107 Mo. 240, 17 S. W. 946; Bischoff v. People's Ry. Co., 121 Mo. 216, 25 S. W. 908.] In this case, an injury would have been likely to have resulted if plaintiff had continued in the space between the two sets of tracks, and after she discovered her danger from the Taylor avenue car, she did all that could have been done to escape injury.

III. Appellant further contends that plaintiff's instruction on the measure of damages was erroneous. The petition seeks a recovery for damages for nurse hire, hospital bill, ambulance hire, doctors' bills, medicine, and other items incurred by reason of her inju-

ries, the amount of each being specifically stated in the petition. The evidence tended to show that these expenses had been incurred and paid by the plaintiff and were reasonable and necessary under the circumstances. Upon this question the court, in its instruction No. 7, instructed the jury that if they found a verdict for the plaintiff, they should assess her damages at such sum as would reasonably compensate her for whatever injuries the jury believed from the evidence she had sustained, if any, and in estimating such damages they should take into consideration, among other things, ''the reasonable expenses paid out and incurred by her in procuring physicians and medical attention and nurse hire, if any, on account of such injuries, if any, and directly caused by such injuries.''

It will be noticed that this instruction does not limit the amount of recovery for these items to the amount claimed in the petition. This was reversible error which could not be cured by a remittitur. [Smoot v. Kansas City, 194 Mo. 513, 522, 92 S. W. 363; Heinz v. United Rys. Co., 143 Mo. App. 38, 122 S. W. 346.] In the latter case, the action was for damages for personal injuries, and the petition alleged, among other items of damage, that plaintiff lost two weeks' time and his earnings of $2.50 during that period; that his injuries were treated by a physician and on account of the services of the latter to plaintiff he became indebted to the physician for the reasonable value of the treatment, to-wit, fifty dollars. The evidence tended to support the items of charge in the petition. The instruction on the measure of damages told the jury to assess damages for any loss of earnings they might believe had been occasioned by the injuries, and the reasonable expense, if any, he had incurred, for medical treatment. An exception was taken to the instruction (as in this case) based on a failure to limit recovery for loss of earnings and for medical services

to the amounts charged in the petition to have been sustained in consequence of those items. The court, in passing upon this question, said: "We do not see how, in the face of the decisions of the Supreme Court in Smoot v. Kansas City, 194 Mo. 513, 522, and Tinkle v. Railroad, 212 Mo. 445, 471, a reversal of the judgment on account of the instruction on the measure of damages can be escaped." The present case is entirely analogous and the same reasoning applies. The error necessarily was material and necessitates a reversal of the judgment.

IV. It is further contended that the trial court erred in refusing defendant's seventh instruction. This instruction was to the effect that if the jury found that the plaintiff in crossing the track failed to look and listen for the approach of the cars, and if the cars were approaching in dangerous proximity, it was her duty to stop before going into peril and permit the cars to pass, and if the jury believed from the evidence that she passed onto the track of the defendant in dangerous proximity to the approaching east-bound car without looking or listening for the approach of said car, that she was not entitled to recover if they further believed that her failure to look and listen directly caused or contributed to cause in part or in whole her injuries.

It will be seen that this instruction based the negligence of the plaintiff upon her failure to see the east-bound car. We think the instruction was obviously defective because it denied recovery upon the sole ground that plaintiff failed to perceive the approach of the east-bound car, first, because the court in the instruction given of its own motion stated this same proposition in language that covered the refused instruction, and second, if the defendant's servants were guilty of negligence in placing the plaintiff in a dangerous situation in which she was required to act

on an emergency, as the plaintiff's evidence tended to show, the instruction would be improper without further qualification.

V.  Another contention made by appellant is that the trial court erred in allowing plaintiff's counsel to charge the defendant with "infamy," and, upon request, refusing to rebuke or reprimand plaintiff's counsel therefor.  In this case, the defendant's counsel himself was not entirely without blame as he first led the way outside the record in an attempted defense of the character of his client before it had been attacked, and thus opened the way and threw down the bars for counsel on the opposing side to make an attack, and in the fervency and zeal which characterize advocacy no doubt the plaintiff's counsel went beyond due bounds and should have received at the hands of the court a proper reprimand.  When the conduct and remarks of an attorney are reprehensible, the trial court should reprimand the offender and admonish him to desist, and if this does not prove sufficient, should punish him for contempt of court.  As appellate courts have often said, one of the first duties of a judge of a trial court and an important duty is to preserve order in the court and require that the attorneys as well as other persons present should by their behavior show a decent respect for the court, for the opposing counsel and for the parties litigant, as well as witnesses who testify in the case.  We quote with approval in this connection the language of Judge GANTT, speaking for the Supreme Court in the case of Haynes v. Town of Trenton, 108 Mo. l. c. 133, 18 S. W. 1003. He said: "The disposition of this court is to permit the greatest latitude in the argument of a cause to the jury.  But its disposition to trust largely to the discretion of the trial courts must not be construed that we will, on that account, tolerate the clear disregard of a litigant's right to have his cause heard and tried

according to the law of the land. The conduct of counsel for plaintiff in making these and similar statements cannot be excused. Counsel will not be permitted to wring verdicts from juries by statements extraneous to the record, and rely upon our disinclination to interfere." See, also, Tuck v. Springfield T. Co., 140 Mo. App. 335, 124 S. W. 1079. In the late case of Torreyson v. United Rys. Co., 129 S. W. 409, this court had occasion to consider this question and reversed the judgment on account of the improper remarks of the plaintiff's counsel. It is unnecessary for us to proceed further with the discussion of this matter as the remarks of counsel may have been inadvertently made, prompted by the statements of defendant's counsel, and, as the judgment is to be reversed and the cause remanded, no doubt counsel on both sides will use proper care to keep within the record in the event of another trial.

As this case is to be retried, we call attention to the instruction given for the plaintiff on the court's own motion in the latter clause of which there seems to be an omission, perhaps a typographical error, and if given on another trial, it should be corrected so that the latter part will read,—"after discovering the danger to plaintiff, or *if he* could have discovered such danger by keeping a vigilant watch."

Also, in plaintiff's petition, in the last part of the statement of the first count, these words appear,—"negligenly and carelessly failed to do so *thereby directly contributing to plaintiff's injuries.*" Also, in the other count, "thereby causing and directly contributing to plaintiff's injuries as hereinbefore alleged." It might be better to omit or change these clauses of the petition. [Hof v. St. Louis T. Co., 213 Mo. 445, 111 S. W. 1145.]

Also, the plaintiff's instruction on the measure of damages authorizes damages for "impairment of the plaintiff's health," when no such charge is directly

contained in the petition, and a recovery of damages ought to be limited to the specific injuries stated in the petition.

For the reasons stated, the judgment is reversed and the cause remanded. All concur.