ROBERT C. SPENCER and LAURA E. SPENCER v. ST. LOUIS TRANSIT COMPANY, Appellant.

Division One, July 12, 1909.

1. **NEGLIGENCE: Dragging After Being Struck.** The evidence tended to show that the five-year old child was struck by the fender of the car and picked up by the fender, and that thereafter the car ran from forty to fifty feet on a slight upgrade; that during such time she fell from the fender and when found was under the fender and her head upon the rail, the wheel being up against her neck, but not upon it. It is not shown that her

body was mutilated, but she was dead when removed immediately after the car stopped. *Held,* that the jury may have well found that she was not actually killed by the impact of the first blow, but that she received the death-dealing wounds after she fell beneath the fender and was being dragged along under the car, or they might have as·readily found that the first blow was sufficient to produce death; and an instruction was not erroneous which authorized a verdict for plaintiff if after she was struck by the car she was dragged to her death by the motorman's failure to quicker stop the car, there being evidence that he could have sooner stopped it.

2. ———: ———: **Sooner Stopping the Car.** The motorman testified that the car was going seven or eight miles per hour, and that he saw the five-year-old child come from behind a wagon and run towards the track; that she was then fifteen or twenty feet from the track and running towards it; and that he then began to stop the car and stopped it within 25 feet, although other of defendant's witnesses say it could not have been stopped in less than seventy or eighty feet. Plaintiff's witnesses testify that it could have been stopped within ten or fifteen feet, running seven or eight miles an hour; that it was running fifteen miles an hour, and ran forty or fifty feet after the child was struck. *Held,* that the evidence was conflicting, and it became a question for the jury to determine whether or not the car could have been stopped sooner than it was.

3. ———: **Instruction: Vigilant Watch Ordinance: Question of Law.** The Vigilant Watch Ordinance requiring motormen to keep a vigilant watch for persons on the track or approaching towards it, and especially children, and to stop the car on the first appearance of danger to them, is a reasonable exercise of the police power, and its violation is negligence *per se*; and an instruction which recites defendant's duty thereunder and tells the jury that, if the child's death resulted from defendant's failure to perform that duty, plaintiffs are entitled to recover, unless they or their said child were themselves negligent,·does not submit a question of law to the jury, and is not faulty—except, perhaps, it should not have admitted that a five-year-old child could be guilty of contributory negligence.

4. ———: **Mother's Contributory Negligence: Humanitarian Doctrine.** The court did not err in telling the jury that if the five-year-old child's mother "took the same degree of care of the child as a reasonably prudent person ordinarily would under the same or similar circumstances, then she was not guilty of such contributory negligence as would defeat a recovery by the child's parents;" nor, in further instructing them that, "even if the jury should believe she did not exercise reasonable

care, in that the child escaped from her grasp and ran across the railroad track as shown in evidence, yet this would not defeat plaintiff's recovery, if you believe the motorman, after seeing the child either on the track or moving towards it, failed to stop the car in the shortest time and space practicable, and that such failure occasioned the death of the child." The last part of this instruction submits the well-recognized humanitarian doctrine.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

AFFIRMED.

*Glendy B. Arnold* for appellant; *Boyle & Priest* of counsel.

(1) The court should have given the peremptory instruction asked by defendant at the close of the whole case, because there was no evidence tending to show that the car, while running at a speed it was shown to be running at the time of the accident, to-wit, fifteen miles per hour, could have been stopped or checked in time to have avoided the death of deceased after her danger was apparent—the last-chance doctrine being the sole theory, under the pleadings and evidence, on which the case was submitted to the jury. Theobald v. Railroad, 191 Mo. 395; Reno v. Railroad, 180 Mo. 485; Zurfluh v. Railroad, 46 Mo. App. 636. (2) Plaintiffs' first instruction is erroneous for two reasons: First. Because the jury were authorized to return a verdict for plaintiffs if they believed that after deceased was struck by the car she was dragged to her death by the motorman's failure to stop the car quicker, while the evidence fails to show that the dragging contributed in any degree to her death. Masterson v. Railroad, 204 Mo. 520. Second. Because, even though she was dragged to death, yet there is no evidence that it could have been stopped any sooner than it was stopped. Theobald

v. Railroad, 191 Mo. 395. It is error to submit an issue of fact to a jury not sustained by the evidence. Heinzel v. Railroad, 182 Mo. 559; Van Natta v. Railroad, 133 Mo. 21. (3) Plaintiff's second instruction is erroneous because it submits a question of law to the jury, and is misleading. Gebhardt v. Railroad, 97 Mo. App. 373; Stanley v. Railroad, 114 Mo. 606. The instructions should set out the facts constituting the negligence with the direction to the jury that if they find them to be true, then the plaintiff might recover. (4) Plaintiffs' sixth instruction is erroneous, because it submits to the jury questions of law. Said instruction should have embodied the facts specifying the manner or way in which the motorman's failure on the first appearance of danger to stop the car within the shortest time and space practicable could have contributed to the death of the deceased. This instruction is also misleading.

*Seneca N. & S. C. Taylor* for respondents.

(1) The court did not err in refusing to give defendant's peremptory instructions offered as demurrers to the evidence. (a) Where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact to be settled by the jury, and this whether the uncertainty is raised by conflict of testimony, or because of the facts being undisputed, fair-minded men may draw different conclusions from them. Buesching v. Gas Light Co., 73 Mo. 219; Harris v. Railroad, 89 Mo. 233; Berry v. Railroad, 124 Mo. l. c. 244; Weller v. Railroad, 164 Mo. 181; Erickson v. Railroad, 171 Mo. 647; Campbell v. Railroad, 175 Mo. 161; Powers v. Railroad, 203 Mo. l. c. 280; Williamson v. Railroad, 202 Mo. 376; Railroad v. Landrigan, 191 U. S. 461; Warner v. Railroad, 168 U. S. 339; Railroad v. Gentry, 163 U. S. 353; Railroad v. Griffiths, 159 U. S. 603; Railroad v. Powers, 149

U. S. 43; Railroad v. Ives, 144 U. S. 408; Railroad v. Converse, 139 U. S. 469.   (b)   Contributory negligence is an affirmative defense, and the burden of proof rests on defendant to establish it.   Koerner v. St. Louis Car Co., 209 Mo. 141; Moore v. Railroad, 194 Mo. 1; Campbell v. Railroad, 175 Mo. 161; Erickson v. Railroad, 171 Mo. 647; Weller v. Railroad, 164 Mo. 181; Hutchinson v. Railroad, 161 Mo. 246; Lamb v. Railroad, 147 Mo. 171; Von Treba v. Gaslight Co., 209 Mo. 648.   (2)   The court did not err in giving plaintiff's first instruction. This instruction correctly directed the jury upon the alleged ''common law negligence'' charged in the petition.   It is doubtful if any fair-minded man can point to any technical error in this instruction, much less a reversible error.   (a)   An electric street railway operating dangerous machinery at a rapid speed in a populous city is bound to know that children have an equal right to the use of street crossings; therefore, it is the duty of the motorman to be on the lookout, and to take all reasonable measures to avoid injuring them while passing over the tracks at a street crossing, and failure to do so is negligence.   Pope v. Railroad, 99 Mo. 405; Winters v. Railroad, 99 Mo. 517; Senn v. Railroad, 108 Mo. 142; Henry v. Railroad, 113 Mo. 525; Sweeny v. Railroad, 150 Mo. 385; Klockenbrink v. Railroad, 172 Mo. 678; Schafstette v. Railroad, 175 Mo. 152; Riska v. Railroad, 180 Mo. 168.   (b)   When a motorman discovers, or, by the exercise of reasonable care, might have discovered, a child about to cross a railroad track a short distance ahead of his car, upon a public street crossing, it is the duty of the motorman to have the power by which he propels the car under his control, so as to avoid a collision, if by reasonable care he can do so, and failure of this duty is negligence, making the railway liable.   Murray v. Railroad, 108 Mo. App. 501; Degel v. Railroad, 101 Mo. App. 56; Sepetowski v. Railroad, 102 Mo. App. 110; Coates v. Railroad, 168 Mo. 544; Klockenbrink v. Railroad, 172 Mo. 678; Hutch-

ison v. Railroad, 88 Mo. App. 383. (c) Even if it was negligence on the part of Mrs. Spencer on the occasion in question to allow deceased to jerk loose from her hand and run across the street car tracks (and we deny that it was), still it was the duty of the motorman, after seeing the child in danger, or if by the exercise of ordinary care he could have seen her in danger, in time to avert killling her, to do so, and failure to do so was negligence. Morrissey v. Wiggins Ferry Co., 43 Mo. 384; Brown v. Railroad, 50 Mo. 466; Meyers v. Railroad, 59 Mo. 231; Matthews v. Grain Elevator Co., 59 Mo. 478; Harland v. Railroad, 65 Mo. 25; Werner v. Railroad, 81 Mo. 368; Bergman v. Railroad, 88 Mo. 685; Dunkman v. Railroad, 95 Mo. 244; Jennings v. Railroad, 99 Mo. 394; Henry v. Railroad, 113 Mo. 525; Morgan v. Railroad, 159 Mo. 262. (3) The court did not err in giving to the jury plaintiff's second instruction. This instruction related to the duty of the motorman under the Vigilant Watch Ordinance. Weller v. Railroad, 164 Mo. 192. This court has also repeatedly held that where an instruction is given with reference to a particular statute or ordinance, it is sufficient that the instruction contain the language of the statute or ordinance. Indeed, this court has gone so far as to say that it is better that the instruction should contain the language of the statute. Jacobson v. McDonald, 8 Mo. 565; Beach v. Baldwin, 14 Mo. 597; State to use v. Schnake, 21 Mo. App. 349; Holliday v. Jackson, 21 Mo. App. 660; State v. Frank, 103 Mo. 120; State v. Miller, 93 Mo. 263. (4) Where the defendant requests and the court gives instructions setting forth the same theory of the case, and in harmony with those given at the request of plaintiff, defendant cannot complain on account of the giving of such instructions. Smart v. Kansas City, 208 Mo. 204; Phelps v. City of Salisbury, 161 Mo. 14; Christian v. Ins. Co., 143 Mo. 467; Whitmore v. K. & L. of Honor, 100 Mo. 47; Reilly v. Railroad, 94 Mo. 611; Kansas City v. Madsen, 93 Mo. App.

143; Miller v. Crigler, 83 Mo. App. 399; Haggard v. Ins. Co., 53 Mo. App. 106; Gates v. Railroad, 44 Mo. App. 495; Soldanels v. Railroad, 23 Mo. App. 522.

GRAVES, J.—Plaintiffs, husband and wife, sue for the alleged negligent killing of their infant daughter, Olive L. Spencer, by defendant. Olive L. was five years of age, and met her death by being struck and dragged by one of defendant's street cars near the junction of Sidney street, Gravois avenue and Jefferson avenue, in the city of St. Louis, on October 18, 1904. Jefferson avenue runs north and south; Sidney street runs east and west, and Gravois avenue crosses both Sidney street and Jefferson avenue in a diagonal course. On both Jefferson avenue and Gravois avenue defendant maintained double-street-car tracks. The car striking the child was one going in a northeasterly direction on the south one of the two tracks on Gravois avenue.

As acts of negligence, the petition charges: "That the car which struck, knocked down and dragged said Olive L. Spencer was being operated as a street car by a motorman in the employ of the St. Louis Transit Company, and that said motorman saw, or by the exercise of reasonable care might have seen said child approaching said track and in danger of being struck by said car, a sufficient length of time before the collision, as by the exercise of reasonable care and with the appliances on hand to have so operated the car as to have avoided striking said child, and to have so operated said car as to avoid after striking her of dragging her a distance of forty or fifty feet thereby causing her death; but, said motorman negligently failed to so operate said car after he saw or by the exercise of reasonable care might have seen her, so as to avoid said collision, but on the contrary, negligently allowed said car to collide with said child, and then negligently allowed said car to drag said child forty or fifty feet causing her death as aforesaid."

In addition to the above the defendant was charged with having run its car at an excessive rate of speed, to-wit, fifteen miles per hour, in violation of a general ordinance which limited the speed to eight miles per hour. The Vigilant Watch Ordinance was also pleaded. It is also charged that a city ordinance relating to fenders on street cars had been violated, and further that the defendant failed to stop its car twenty feet to the west of the crossing on Jefferson avenue in violation of another ordinance.

Answer was a general denial, to which was coupled a plea that the negligence of the mother, Laura E. Spencer, caused the injury and death of the child.

Reply denied the new matter in the answer.

Judgment went for plaintiffs in the sum of five thousand dollars, from which after all necessary steps were taken, the defendant duly appealed.

From the evidence of the plaintiff, Mrs. Spencer, it appears that the father of deceased was an employee of defendant; that the mother had read the book of rules and was familiar with the rule of the company which reads, "Motormen will bring their cars to a full stop twenty feet from all street railroad intersections;" that plaintiffs lived on the east side of Jefferson street within less than a block of Sidney street and to the south of Sidney street; that on the afternoon in question which was a clear, bright afternoon, Mrs. Spencer took the child, Olive, to a store on the northwest corner of Sidney and Jefferson streets to make some small purchases for birthday presents, little Olive being five years of age upon that day; that after the purchases were made, the mother and child went east across Jefferson avenue to the corner of Jefferson and Gravois avenues, being then north of the tracks on Gravois avenue; at this point there was a crossing on the east side of Jefferson avenue which lead down to their home; when Mrs. Spencer in coming east from the store reached this crossing at the point above named, she

says she looked both to the east and the west and, seeing no cars, she took the little girl by the hand and started across, but after taking a few steps the little girl jerked away from her and ran on ahead; that she looked up and saw a car approaching from the west on Gravois avenue, at about the intersection of the street car tracks on Jefferson and Gravois avenues; that she hollowed at the child and ran after her, and in trying to get to the child was herself struck by the car; that the last she saw of the child she was in the middle of the south tracks, and when the car was stopped she ran around the rear thereof to see if the child had gotten across, and started then to the front when some parties took her into a nearby drug store; she also testified that there were no wagons or other obstructions.

By other testimony it is shown that the child was struck whilst on the crossing on the east side of Jefferson avenue; that Jefferson avenue is about sixty-five feet in width, with double street-car tracks therein; that the car ran from one to two car-lengths after striking the child; that it was going about fifteen miles per hour at the time; that it had not stopped on the west side of Jefferson avenue before crossing the tracks therein; that there was no sound indicating the application of the reverse prior to striking the child; that the accident occurred about five o'clock in the afternoon, at a time when there was considerable travel at this junction; that had the car been running at eight miles an hour it could have been stopped by the use of all the appliances therein within ten to twelve feet as given by one witness, and within ten feet to fifteen feet as given by another witness; that the car was being operated by the defendant company. The best detailed description of the accident is thus given by one witness:

"Q. What did you see occur then? A. Why, by the time that I got across the tracks, about middleway between the curb and the car tracks, I heard Mrs. Spencer scream and I looked in the direction it came from

and I see a little child about five or six feet in front of the car and Mrs. Spencer making an attempt to run in after it to catch it, and about the time the car struck the little child it also struck Mrs. Spencer and knocked her down and knocked the little girl down and picked her up on the back fender, that is, when the back fender struck her it picked her up on it, and the car run about, I should judge, thirty-five or forty feet, and the little girl rolled off of the back fender down in front of the fender and it just rolled her along right in front of the fender for about eight or ten feet, and she rolled right in under the fender and the car ran about six feet while she was rolling in under the fender to where it stopped. When the car stopped the little girl was right in front of the front wheel.''

Plaintiff also introduced a part of section 1760, article 6, of the St. Louis Municipal Code, which reads: ''No car shall be drawn at a greater speed than eight miles per hour.'' They also introduced the Vigilant Watch Ordinance, so often quoted and mentioned in our cases.

The evidence of one witness for the defendant tended to show that there was a high wagon passing toward the southwest; that the little girl checked up until the wagon passed and then ran behind the wagon across to and upon the street car tracks where she was struck and killed. The motorman testified that he met such a wagon there and that the little girl came from behind it and ran as fast as she could upon the track whereon the car was running; that he used the appliances and stopped the car as soon as he could which was within eight or ten feet of the point where he struck the child; that he saw the child some fifteen or twenty feet before she reached the track; and saw that she was running toward the track, and at once began to stop the car; that his car was only running seven to eight miles per hour; that he stopped his car within the space of twenty-five feet, on that occasion, and had

stopped it at that rate within that space on previous occasions; that the wheel of the car did not run over the child.

By two experts the defendant shows that such a car going eight miles per hour couldn't be stopped with due regard to the safety of passengers within less than seventy to eighty feet. All the evidence shows that the car was going on a slight upgrade.

Defendant's evidence also tended to show that the fender was so constructed that if an object got onto it, it could not roll off; that the car was stopped west of Jefferson avenue to await the passage of a car on the Jefferson avenue line, and started up and ran across the Jefferson avenue track with the power off. Defendant also introduced an amended ordinance by which it was shown that the speed limit was ten miles an hour instead of eight miles, as by the old ordinance prescribed.

In rebuttal the plaintiffs showed that there was no wagon there at the time and nothing to obstruct the view of the motorman. That there was no stop west of Jefferson avenue. This sufficiently states the facts shown.

Points made will be noted in the course of the opinion.

I. Instruction No. 1 given for the plaintiff reads:

"If the jury find from the evidence that on the 18th day of October, 1904, the defendant St. Louis Transit Company was a carrier of passengers by street railroads propelled by electricity and that it used the railway and car mentioned in the evidence for such purpose; and if the jury further find from the evidence that on that day Robert C. Spencer and Laura E. Spencer were the father and mother of Olive L. Spencer, a minor, aged five years, and that the latter was born in lawful wedlock of plaintiffs; and if the jury find

from the evidence that said Olive L. Spencer on the 18th day of October, 1904, while crossing the double street-car tracks of defendant, on Gravois avenue, was struck and knocked down by the electric street car mentioned in the evidence, at the eastern crossing of Jefferson avenue, in the city of St. Louis; and that after being so knocked.down, she was dragged by such car about fifty feet, thereby causing her death; and if the jury further find from the evidence that said Olive L. Spencer was unmarried and left no, child surviving her; and if the jury further find from the evidence that on said occasion a motorman in the employ of the St. Louis Transit Company was operating said car for said St. Louis Transit Company; and if the jury further find from the evidence that such motorman so operating said car saw, or by the exercise of reasonable care would have seen said child approaching the track, and in a dangerous situation, a sufficient length of time before she was struck by said car, as that, by the exercise of reasonable care, with the appliances at hand, and with due regard to the safety of passengers, he could and would have so operated said car, as that after she was struck he would have averted the dragging of her such distance as resulted in her death, if the jury find she was so dragged, and that such dragging caused her death, then the jury should find for the plaintiffs and against the defendant St. Louis Transit Company, unless they further find that there was negligence on the part of such child or of plaintiffs directly contributing to the death of said child.''

This instruction is challenged for two reasons, as speaks defendant's brief:

''First.  Because the jury was authorized to return a verdict for plaintiffs if they believed that after deceased was struck by the car she was dragged to her death by the motorman's failure to stop the car quick-

er, while the evidence fails' to show that the dragging contributed in any degree to her death.

"Second. Because, even though she was dragged to death, yet there is no evidence that it could have been stopped any sooner than it was stopped."

We cannot concur in defendant's first assignment of error as to this instruction. The evidence tends to disclose that the child was struck and picked up by the fender and that the car ran a distance of forty to fifty feet on a slight upgrade thereafter. That during such time the child fell from the fender and when found was under the car with her head upon the rail, with the wheel of the car up against her neck, but not upon it. It is not shown that she was mutilated, but was dead when removed, and from the evidence the jury might have well found that she was not actually killed by the impact of the first blow to her little body, but received the death-dealing wounds after she fell beneath the fender and was being dragged along thereunder, or they might have as readily found that the first blow was sufficient to produce death. There were sufficient circumstances in evidence upon which to submit this view to the jury. Nor do we think the language used in the Masterson case, 204 Mo. l. c. 520, 521, is fatal to this instruction under the facts of this case. What was there said was in the light of the facts of that case, and the discussion considers other matters not apparent in this record.

Nor do we think the second contention is tenable. The defendant's motorman says his car was going only seven or eight miles per hour and he says that he saw this child fifteen or twenty feet from the track and running toward it, and that he then began to stop. He says he stopped within twenty-five feet, although other witnesses for defendant say the car could not be stopped in less than seventy or eighty feet. Plaintiff's witnesses say that the car could have been stopped within ten to fifteen feet. The question therefore be-

came one for the jury to determine from this conflicting proof. It is evident that he had much more than fifteen feet within which to stop, if the child had to run even fifteen feet to the point of collision from the point where he first saw her. A little five-year old tot would not travel this fifteen feet within the time that a street car would go the same distance going at a rate of seven or eight miles per hour. Even grant it that by reason of the angle of the tracks at that point the child would be running, in going south, somewhat toward the car which was coming northeast, yet there are ample circumstances in the record tending to show that the motorman had much more than fifteen feet within which to stop his car after he says he saw the child running to the danger point. To our mind, the instruction was well enough under the facts of the case.

II. Instruction numbered 2 for the plaintiff, reads thus:

"The jury are instructed that at the time when and the place where said Olive L. Spencer was struck by the car and dragged and killed, the law imposed upon the motorman, while running said motor car, the duty to keep a vigilant watch for all persons on foot, and especially children, either on the track or moving toward it, and on the first appearance of danger to such child, to stop the car within the shortest time and space practicable, consistent with the safety of passengers. And if the jury find from the evidence that the motorman operating said car failed to perform such duty, then such failure was negligence on the part of the St. Louis Transit Company; and if the jury believe from the evidence that in consequence of such negligence above specified the death of said child was caused, your finding should be for the plaintiffs, unless you find from the evidence that plaintiffs, or one of them, or said child was guilty of negligence which directly contributed

to the death of said child; and the burden of proving contributory negligence on the part of said child or plaintiffs rests on defendant, and unless defendant has proven such contributory negligence by a preponderance of evidence you cannot find for the defendant on that ground.''

It is urged that this instruction ''is erroneous because it submits a question of law to the jury and is misleading.''

The instruction is not faulty. The first part recites the duty of defendant under the Vigilant Watch Ordinance in evidence, and then declares any failure to perform that duty was negligence, and that if the child's death was the result of such negligence the plaintiffs were entitled to recover if they themselves had not been guilty of negligence. The only questionable thing we see in this instruction is in that part which submits to the jury the contributory negligence of a five-year-old child.

An instruction of this character was approved in Weller v. Railroad, 164 Mo. l. c. 192 and 205. Neither is such an instruction misleading. The ordinance itself is a reasonable exercise of the police power, and its violation negligence *per se*. This contention is ruled against defendant.

III. Plaintiff's instruction numbered 6 is criticised by the defendant. This instruction reads:

''If the jury find from the evidence that Mrs. Spencer took the same degree of care of the child on the occasion in question as a reasonably prudent person ordinarily would under the same or similar circumstances, then she was not guilty of such contributory negligence as would defeat this action. And even if the jury should believe that she did not exercise reasonable care, in that the child escaped from her grasp and ran across the railroad track as shown in the evidence, yet this would not defeat plaintiff's recovery, if you believe

that the motorman after seeing the child either on the track or moving toward it, and on the first appearance of danger to such child failed to stop the car within the shortest time and space practicable, consistent with the safety of the passengers on board the car, and that such failure by said motorman occasioned the death of said child.''

We see no error in this instruction. It reiterates the well recognized humanitarian rule. Besides the defendant recognizes in the latter clause of its instructions numbered 2, given by the court, the same doctrine.

Nor was there error in refusing defendant's demurrer to the evidence in this case. There was ample evidence upon which to submit the case to the jury. We have gone through the numerous instructions given and refused, and are of opinion that the case was fairly submitted, and well tried throughout. Further details will serve no good purpose. The judgment should be and is affirmed.

All concur.