JOHANN D. KIRCHOF, Respondent, v. UNITED
RAIWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, January 24, 1911.

1. STREET RAILWAYS: Negligence: Injury to Driver of Vehicle: Sufficiency of Evidence: Question for Jury. In an action against a street railway company for injuries sustained in a collision between a vehicle driven by plaintiff and a street car operated by defendant, where it was shown that plaintiff was driving along the street between the track and the curb and, in turning out to avoid a vehicle standing near the curb, drove his wagon on the track, where it was struck by a street car, evidence *held* sufficient to warrant the submission of the case to the jury.

2. EVIDENCE: Conclusions Admissible, When. Even nonexpert witnesses are permitted to state their conclusions of fact, as facts, where the basic facts are of such a nature that they cannot be reproduced so as to present to the jury the picture impressed on the mind of the witness, and, in such case, the impression or conclusion becomes an evidential fact, and may be given to the jury because of the impossibility of bringing to them all of the facts that combine to create it.

3. ———: ———: Instances. Opinions may be given by nonexpert witnesses as to the state of health, hearing, or eyesight of another, as to the ability of another to work, walk or use his arms or legs naturally, as to whether such other is apparently suffering pain, is unconscious, in possession of his or her mental faculties, is intoxicated, excited or calm.

4. ———: ———: Physician's Opinion. In an action for personal injuries, it is proper to permit a doctor who had examined plaintiff to state that up to the time of the trial plaintiff had been unable to do manual labor, since the ability of plaintiff to labor depended on his strength or weakness, which could not be described, but the physical indications of which were nevertheless apparent to the senses and produced an impression upon the witness.

5. STREET RAILWAYS: Negligence: Evidence: Speed of Car. In an action for injuries received in a collision between a street car and a wagon, it was not prejudicial error to permit a witness to testify that the car was running faster than cars on that line ordinarily ran, although there was no evidence how fast they ordinarily ran, where, on cross-examination, he testified the car was going something near fifteen miles an hour.

6. ———: ———: **Injury to Driver of Vehicle: Instructions: Comparative Negligence.** In an action against a street railway company for injuries from a collision between a street car and a wagon, an instruction, after hypothesizing the facts constituting defendant's negligence, and concluding, "then, unless you further find from the evidence under the other instructions that plaintiff was so negligent as under all the circumstances to prevent his recovery your verdict will be in plaintiff's favor," does not submit to the jury the doctrine of comparative negligence nor does it leave it to the jury to say how much negligence plaintiff must have been guilty of before it would bar his recovery.

7. ———: ———: ———: **Pleading: Instructions.** In an action against a street railway company for injuries from a collision between a street car and a wagon, an allegation in the petition that the motorman negligently and without using ordinary care to control and stop the car, caused and suffered the same to strike the wagon, etc., is broad enough to cover the theory that the motorman kept the control, but did not exercise it as an ordinarily prudent man would, and if, as an instruction hypothesizes, the motorman "did not keep his car under such control as an ordinarily prudent man would under all the circumstances in evidence," then, as charged in the petition, he did not use ordinary care to control or stop the car.

8. ———: ———: **Instructions: Submission of Last Chance Doctrine and Primary Negligence.** In an action against a street railway company for injuries from a collision between a street car and a wagon, an instruction submitting the last chance doctrine and allowing a recovery in spite of plaintiff's negligence is not inconsistent with instructions which allow a recovery provided plaintiff was not guilty of contributory negligence.

9. **DAMAGES: Future Disability: Pleading: Sufficiency of Proof.** In an action for personal injuries, *held* the averments of the petition and the proof were sufficient to warrant an allowance for damages for loss of earnings and for future disability to labor.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*Glendy B. Arnold* for appellant; *Boyle & Priest* of counsel.

(1) The verdict of the jury is tainted with passion, prejudice, sympathy and partiality. Lehnick v. Railroad, 118 Mo. App. 611. (2) The court erred in permitting Dr. Baer to state his conclusion that plaintiff was physically unable to do manual labor. Glasgow v. Railroad, 191 Mo. 347; Smart v. Kansas City, 208 Mo. 162; Lutz v. Railroad, 123 Mo. App. 499; Thomas v. Railroad, 125 Mo. App. 131; Kaw Feed Co. v. Railroad, 129 Mo. App. 498; Sutter v. Kansas City, 138 Mo. App. 105. (3) The court erred in permitting witness Emil Tschnudin to state that in his opinion the car was running faster than street cars ordinarily ran in the absence of a statement by him as to what he considered the ordinary speed of cars. It is elemental that opinions of witnesses must be based on facts. Hurt v. Railroad, 94 Mo. 255. (4) Plaintiff's first instruction is erroneous for the further reason that it submits to the jury the doctrine of comparative negligence. Hurt v. Railroad, 94 Mo. 255, 264. (5) Plaintiff's second instruction is erroneous because it authorizes a verdict upon the theory that the motorman, through his negligence, lost control of his car, whereas the petition proceeds upon the theory that he had control of the car when the danger arose. Heinzle v. Railroad, 182 Mo. 528; Degonia v. Railroad, 224 Mo. 564. (6) Plaintiff's third instruction is erroneous because it submits the humanitarian doctrine to the jury without any evidence in the record to sustain it. Degonia v. Railroad, 224 Mo. 564; Ries v. Transit Co., 179 Mo. 1; Dey v. United Railways Co., 140 Mo. App. 639. (7) Plaintiff's first and second instructions are inconsistent with his third instruction. Under his first and second instructions his contributory negligence defeats his recovery and under his third instruction he is allowed to recover, notwithstanding his contributory negligence. Krehmeyer v. Transit Co., 220 Mo. 639; Hough v. St. Louis Car Co., 123 S. W. 83. (8) If plaintiff's third instruction is

proper then his first and second instructions are erroneous, because by his third instruction he admits he was guilty of contributory negligence and by the terms of both his first and second instruction, such contributory negligence defeats his recovery. Krehmeyer v. Transit Co., 220 Mo. 639; Hough v. St. Louis Car Co., 123 S. W. 83; Degonia v. Railroad, 224 Mo. 564. (9) Plaintiff's first and third instructions are erroneous because in authorizing the jury to find defendant's motorman guilty of negligence for failing to stop the car upon the first appearance of danger to plaintiff, the jury is not required by those instructions to consider the safety of the passengers on the car. Bell v. Railroad, 72 Mo. 50; Hienzle v. Railroad, 182 Mo. 528; Ruschenberg v. Railroad, 161 Mo. 70; Culbertson v. Railroad, 140 Mo. 35. (10) Plaintiff's sixth instruction is erroneous because it authorizes damages for loss of earnings, past and future, without any allegation in the petition of such special damages. Slaughter v. Railroad, 116 Mo. 269. (11) Plaintiff's sixth instruction is erroneous for the further reason that it authorizes damages for loss of earnings, past and future and for future disability to labor, without any evidence of such damages. Slaughter v. Railroad, 116 Mo. 269; Stafford v. Adams, 113 Mo. App. 717.

*Richard A. Jones* for respondent.

(1) The physician had been in touch with the case from the time of the injury and had opportunity to observe plaintiff's physical condition. Certainly, as a physician, he was competent to testify as to its effect upon respondent's physical ability. Palmer v. Street Ry. Co., 63 L. R. A. 507; Turnpike Co. v. Andrews, 1 N. E. 364, 368, 102 Ind. 138. With such personal knowledge of respondent's condition even a non-expert could properly have testified concerning such matter. Lindsay v. Kansas City, 195 Mo. 166, 181; Chattanooga R.

& Co. v. Huggins, 89 Ga. 494; Harris v. Detroit City Ry. Co., 76 Mich. 227; Langworthy v. Township of Greer, 88 Mich. 207; Lawson v. Conaway, 18 L. R. A. 627; Robinson v. Fire Co., 24 L. R. A. 715. (2) If the instruction of respondent had contained no reference to contributory negligence on his part, still in view of the instruction given at the request of appellant, this would constitute a fair direction to the jury. Lang v. Railroad, 208 Mo. 458. (3) Appellant's contention that by requesting and having given an instruction on the Vigilant Watch Ordinance, the respondent thereby confessed himself negligent and so ought not to have been allowed to have any other instruction bodied upon the fact that he was not negligent, is due, it would seem to a misconception on its part of the scope of the opinion of a majoriy of the court in the case of Krehmeyer v. Transit Co., 220 Mo. 638; Shipley v. Railroad, 128 S. W. 768; Nipper v. Street Ry., 129 Southwestern 439; Childress v. Railroad, 126 Southwestern Reporter 169. The right to unite these two characters of issue in one cause of action and to have instruction given covering them has been heretofore unquestioned in the practice of this state. Rapp v. Transit Co., 190 Mo. 144. (4) Appellant's suggestion that the allegations of the petition are not broad enough to include damages for loss of earnings is not sustained by the authorities cited by appellant and is without merit. Gerois v. Iron & Foundry Co., 124 Mo. 347, 360; Mabrey v. Gravel Road Co., 92 Mo. App. 596.

STATEMENT.—This is an action to recover damages for personal injuries alleged to have been caused by the negligence of defendant. The injury complained of occurred September 11, 1908, on Easton avenue, between Sarah street and Warne avenue, in the city of St. Louis. Easton avenue is a public street and thoroughfare, greatly given to vehicle and street car traffic. A double track street railway line is operated by de-

fendant along the middle of it, running east and west. The south track is used by east-bound cars, one of which inflicted the injury. As acts of negligence, the petition charges that "on or about the 11th day of September, 1908, plaintiff was driving a team of horses attached to a wagon eastwardly on said Easton avenue between Warne and Sarah streets where defendant maintained its railways and operated cars thereon as aforesaid, and drove upon the south track of defendant's said railway in order to pass a wagon standing on said street and while a portion of the wagon being so driven by plaintiff as aforesaid was upon or over the tracks of defendant's street railway, the motorman of defendant in charge of one of its east-bound cars operated by defendant on said railway carelessly and negligently and without using ordinary care to control or stop said car, caused and suffered the same to strike said wagon upon which plaintiff was driving as aforesaid whereby he was thrown therefrom to the street and suffered the injuries hereafter stated."

The "Vigilant Watch Ordinance" was also pleaded and a violation of the duties imposed by it upon the defendant is charged. After pleading that the "violation of said ordinance and the negligent acts of defendant's motorman as aforesaid directly contributed to cause said car to strike said wagon and to the injury of the plaintiff as hereafter stated," the petition describes plaintiff's injuries in detail substantially as they were shown by the evidence as hereinafter mentioned, and then proceeds: "all of which said injuries are permanent and will continue to affect plaintiff in the future, and by reason thereof he has been unable since receiving same to perform his usual avocation of teamster or to do anything towards contributing to the support of himself or family, and will be thereby prevented from so doing and has been obliged to expend moneys and to incur obligations for doctor's services," etc., "all to his damage in the sum of $10,000."

Defendant's answer consisted of a general denial, and a plea of contributory negligence which plaintiff denied. Judgment went for plaintiff for $3000, from which the defendant has appealed.

The proof showed that plaintiff, 47 years old, was on September 11, 1908, and had been for some time past, employed by a St. Louis concern as a teamster to deliver lumber to customers in different parts of the city. Part of his duties was to help load lumber on his wagon. The usual wage earned by him before his injuries was two dollars per day.

At about half past three o'clock of the day mentioned, a bright, sunshiny day, after having made a delivery in the western part of the city, plaintiff's returning course took him, with his empty wagon, eastwardly in and along the way and space between defendant's southernmost rail and the southern curb of Easton avenue. Said way or space was from 16 to 17 1-2 feet in width, and was paved with brick or asphalt. The wagon plaintiff was driving was an ordinary heavy lumber wagon, without a bed, and had an eighteen foot coupling pole, which stuck out about three feet behind the rear wheels. From the rear end of the coupling pole to the front end of the tongue was about thirty feet. The axles were about fifteen feet apart. Two planks about sixteen feet long reached from axle to axle, and plaintiff was sitting on them. At a point near the middle of the block between Sarah street and Warne avenue, plaintiff came to a light spring wagon with a feed bed on it, standing near the curb. It was empty, without horses, and five or six feet wide and twelve feet long. Plaintiff started to guide his team and wagon around it. He testified that he approached the feed wagon from the rear; that it was facing east; that in order to pass it he had to turn out to the north and drive in the street car track. When he got within about twenty-five feet of the feed wagon, and just as he turned his horses out, he looked back and saw defendant's car coming east, about 600 or

650 feet west.   He then drove toward the track and got both his north wheels just over the south rail of the south track.   In this position he traveled eastwardly, he says, about sixty feet, his horses going in a walk, about three or four miles an hour.   His hearing at this time was unimpaired but he heard no noise of the approaching car.   As soon as he came to where his team and the front part of his wagon had passed a point opposite the eastern end of the feed wagon, he turned out of the car track toward the south, and was out with his front wheels and believes out with the back, but the tail end of the coupling pole was still within two feet of the track.   At this moment defendant's car struck the coupling pole with great force, throwing plaintiff out on his head and severely injuring him.   His testimony as to going upon the track was corroborated by Will Harris, a witness, who testified that plaintiff "was driving kind of in the middle of the track" just before the collision, and by Emil Tschudin, who testified that while standing in a furniture store nearly opposite the point of collision, he saw first the wagon and then the car pass, going east.   The wagon "was either in or very near the car track", the south side of the south track.   The wagon had time to drive about sixty feet when the car passed.

Defendant's theory was that respondent did not drive in the track at all; that when he approached the feed wagon, he turned his wagon out to the north to go around it, but did not get on the car track and that it was not necessary for him to do so in order to pass the wagon, but that while so engaged his wagon struck some portion of the feed wagon, and was thereby suddenly thrown upon the track in front of the car and struck by it.

In support of this theory, the motorman testified that when he first noticed plaintiff's wagon, it was about 100 feet ahead of him, and five or six feet south of the track; but as plaintiff passed the feed wagon he bore as close as four feet to the car track; that plaintiff's

wagon was suddenly thrown in front of the car and was hit by it. The righthand front corner of the car struck the wagon. The car over-hung the south track about two feet.

James Evans, a witness for the defendant, testified that he was driving a furniture wagon eastward on Easton Avenue about 150 feet behind plaintiff, and that when plaintiff turned out to pass the feed wagon his hind wheel struck the tongue of the feed wagon and threw him in front of the car.

C. V. Safford and O. Shirley, passengers on the car, testified for defendant that they were looking ahead practically all the time and saw no wagon on the track; that plaintiff's wagon was three or four feet clear of the track, and suddenly slid or skidded over in front of the car.

The witnesses for both parties agreed that the car struck the tail end of the coupling pole and turned plaintiff's wagon clear around. In other words, while at the moment of collision, according to defendant's evidence, plaintiff's wagon was traveling practically east, and according to plaintiff's evidence considerably south, or southeast, all of the evidence agrees that at the moment defendant's car ceased to propel it, plaintiff's wagon and horses were found facing southwest—the tail end toward the northeast. The horses and tongue were crowded up to and around a telegraph pole located inside the curb, while the tail end of the wagon was near the track. The rear end of the car, where it had stopped after the collision, was east of the rear end of the plaintiff's wagon. As to the position of the feed wagon before and after the collision, there is a wide divergence in the testimony. All the witnesses agree that it was near the curb before the collision. Plaintiff testified, as we have stated, that before the collision the feed wagon was facing *east*. The motorman and defendant's witness Evans, testified that it was facing *west*, and Klingle, an employe of the owner of the wagon,

testified for defendant, that the driver of the feed wagon had left it facing *west* about an hour before the collision. Emil Tschudin, for plaintiff, testified that after the accident the feed wagon "was turned crossways of the street almost by the injured man." Dr. Gauen, a witness for plaintiff, who was a passenger on the car, testified that at the crash of the collision, he looked up from a paper he was reading and saw the feed wagon facing east and moving slowly, that it stopped against the plaintiff's shoulder, where he lay between the wheels of his own wagon. The motorman testified for the defendant that the feed wagon was "slightly turned around by the collision of the two wagons." Defendant's witness Evans testified that the plaintiff's wagon turned the tongue of the feed wagon a little northward "and of course, the wheel slid off and left it standing." Safford, one of defendant's witnesses, testified the feed wagon was twenty-five or thirty feet west of plaintiff after the occurrence. Klingle, one of defendant's witnesses, testified that when he went out to see the cause of the crash, the car was pushing plaintiff's wagon around, and the feed wagon was fastened to the plaintiff's wagon, and after the car passed, the feed wagon was turned completely around. It was one of those "five wheel" wagons, the front wheels going under the bed. Could be turned very easily with one hand if taken by the end of the tongue. The feed wagon was only about twelve feet long. Plaintiff's witness Harris testified that after the accident plaintiff's horses were tangled in the single trees, he does not say of what wagon. Defendant's witness Safford testified, "at the time of the collision, I became aware of the feed wagon because it was mixed up."

As to the ringing of the gong, neither the plaintiff nor his witness Gauen heard it. Defendant's witness Evans said the motorman "kept ringing the bell". Safford, defendant's witness, said it was rung almost continuously from the west side of Sarah Street. Moon,

another of defendant's witnesses, although a passenger on the car, did not hear the gong sounded. Shirley, another of defendant's witnesses, said he did not recall whether the bell was ringing or not. Tschudin said he heard it just before the crash. Harris said he heard it ring as plaintiff was driving along the track.

There is no controversy but that the road was dry, and there was nothing to prevent the motorman seeing the plaintiff and his wagon for some 500 or 600 feet before the collision. The motorman stated that he was going from ten to fifteen miles an hour; "pretty fast"; that he first saw plaintiff's wagon slide on to the track when he was within ten or fifteen feet of it and that he stopped his car within its own length, some thirty feet.

Thomas J. Finan, one of plaintiff's witnesses, testified that he saw the car just before it struck plaintiff's wagon; that it was running between twelve and fifteen miles an hour. Emil J. Tschudin testified that he had been on Easton Avenue 14 months and had observed the cars being operated thereon; that he had been in the city four years and had ridden on the cars a good deal. For two years he rode on them twice a day regularly and had had occasion to observe the speed at which they were operated. While he was testifying on direct examination he was allowed, in response to a question by plaintiff's counsel, and over the objection and exception of defendant, to state that the speed of the car just before the collision was faster than the ordinary rate. The ground of the objection was that witness had not stated the ordinary rate with which he was permitted to make comparison. On cross-examination he was interrogated and answered as follows:

By Mr. Arnold, counsel for defendant: "Q. Do you think this car was going as much as fifteen miles an hour? A. Something near that rate of speed, yes, sir.

"Q. About fifteen miles, would you say over fifteen? A. I wouldn't say it was more or less, it was something near that."

The evidence tended to prove that prior to the collision plaintiff's health and hearing were good and he was steadily employed as a teamster at two dollars per day; that he was rendered unconscious until the next morning after the collision; his skull was fractured at the base; the drum of one ear perforated and the hearing in that ear destroyed; his left shoulder was dislocated; he was badly hurt on the breast, and there was a swelling on his neck. That immediately after the accident blood ran from his ear and then a serum, and for 60 days thereafter, pus; that he suffered intense pain in his neck and spine; that he was nervous and had fever and dizziness in his head due to his skull fracture, which made him depend on chairs and other objects to keep from falling when he tried to work; that on this account he had been unable to do any work up to the time of the trial; that he had not recovered from the dizziness and was not well at the time of the trial; that this condition would be permanent; that he had been compelled to have the doctor visit him more than seventy times and in addition made many calls at the doctor's office for treatment; that he was confined to his bed for the first six weeks and to his home for 17 weeks.

Dr. Baer, plaintiff's attending physician, was permitted, in answer to a question propounded to him by plaintiff's counsel and over the objection and exception of defendant, to state that up to the time of the trial the plaintiff was not able to perform any physical labor.

An ordinance of the city of St. Louis, familiarly known as the "Vigilant Watch Ordinance" was introduced by plaintiff in evidence.

At the close of plaintiff's evidence and again at the close of all the evidence, the defendant prayed, and the court refused, an instruction in the nature of a demurrer to the evidence.

155 App.—6

The first instruction given at plaintiff's instance, after submitting an hypothesis according to plaintiff's theory concluded with, "then, unless you further find from the evidence under the other instructions that plaintiff was so negligent as under all the circumstances to prevent his recovery, your verdict will be in plaintiff's favor for such sum, not to exceed Ten Thousand Dollars as you believe under the evidence and other instructions he is entitled to recover." The second was of the same general nature and concluded with, "then your verdict will be in favor of plaintiff, unless you find under the other instructions such negligence on the part of the plaintiff as you believe would prevent his recovery."

The plaintiff's third instruction was as follows:

"The court instructs the jury that it was the duty of the motorman of defendant in charge of the eastbound car which struck the wagon on which plaintiff was driving, to keep a vigilant watch for persons and vehicles driving upon or approaching the track on which such car was being operated, and upon the first appearance of danger to any vehicle or person to stop the car in the shortest time and space possible with the means at his command, and if the jury find from the evidence that plaintiff was driving his wagon upon or so near the track of defendant as to be in danger of being struck by said east-bound car, and that defendant's motorman in charge thereof neglected to keep such vigilant watch or neglected to stop his car in the shortest time and space possible with the means at his command, when the danger of striking said wagon became apparent or should have become apparent if such vigilant watch had been kept, and that in consequence thereof the wagon upon which plaintiff was driving was struck and he was injured, then plaintiff is entitled to recover, even though the jury should believe from the evidence that he did not, under all the circumstances in evidence, exercise ordinary care in driving said wagon

upon defendant's track at the time and place in question."

The plaintiff's sixth instruction was as follows:

"VI. If, under the instructions and evidence, the jury find for plaintiff, you will assess his damage at such sum as you believe from the evidence will be a reasonable compensation to him for such, if any, bodily and mental pain and suffering as he has sustained or will probably suffer and sustain in future in consequence of said injury, and for such, if any, loss of earnings or disability to labor as you may find from the evidence he has sustained or will probably sustain in future in consequence of said injury.

"If, on the other hand, you decide to find for the defendant, your verdict need merely state that you find for defendant on the issues joined."

CAULFIELD, J. (after stating the facts).—I. We have carefully examined and considered defendant's contention that the trial court erred in overruling defendant's demurrer to the evidence. Suffice to say that the testimony and admitted physical facts made a case proper for the jury, and the trial court's action is sustained.

II. The defendant next assigns as error the action of the trial court in permitting Dr. Baer to state that up to the time of the trial the plaintiff had been unable to do manual labor. The court's action was entirely proper. Even non-expert witnesses are permitted to state their *conclusions* of fact *as facts* where the basic facts are of such nature that they cannot be reproduced to present to the jury the picture impressed on the mind of the witness. The impression or conclusion becomes an evidential fact in such case and may be given to the jury because of the impossibility of bringing to them all of the facts that combine to create it. [Fulton v. Met. St. Ry. Co., 125 Mo. App. 239, 246, 102 S. W. 47.] Opinions may be given by non-expert witnesses as to the

state of health, hearing or eyesight of another, or the ability of another to work or walk or use his arms or legs naturally, or whether such other is apparently suffering pain, or is unconscious, in possession of his or her mental faculties, intoxicated, excited, calm, etc. [West Chic. St. Ry. Co. v. Fishman, 169 Ill. 196, 198; Fulton v. Met. St. Ry. Co., 125 Mo. App. 239, l. c. 247, 102 S. W. 47; South and North Alabama Ry. Co. v. McLendon, 63 Ala. 266, 276; Chicago City Ry. Co. v. Van Vleck, 143 Ill. 480, 485; Peterson v. Seattle Traction Co., 23 Wash. 615, 641; Partello v. Mo. Pac. Ry. Co., 217 Mo. 645, 656, 117 S. W. 1138.]

The ability of the plaintiff to labor depended upon his strength or weakness. How could that be described? Yet the physical indications of it were apparent to the senses and produced an impression upon the witness. That the witness in the case at bar was skilled in medical science merely made his impression more valuable.

III. Defendant argues that the court erred in permitting witness Tschudin to testify, over defendant's objection, that the car was running faster than the cars on that line ordinarily ran, there being no evidence of how fast they ordinarily ran. But we gather from defendant's argument that the testimony was prejudicial only in so far as it went to show the speed of the car at the time of the collision. Counsel for defendant says in his brief, "This evidence was given on a vital point in the case, viz., the alleged failure of the motorman to control or stop the car. In fact, this point—the speed of the car—is the very pith of this case. No recovery whatever could have been obtained by plaintiff without some evidence tending to establish the speed of the car." He argues that the jury were unable to grasp what the witness meant by this comparison with ordinary speed; that to some, ordinary speed meant one thing, while to others it meant something entirely different. Granted all that and let us also grant that

there was error in the admission of the testimony; still the uncertainty of the jury and the prejudice arising from the alleged error were both speedily eliminated and cured by the statement of the same witness upon cross-examination by defendant that the car was going something near fifteen miles an hour, he would not say it was more or less; it was something near that. Defendant was not prejudiced by the ruling.

IV. The first instruction was given by the court at the instance of the plaintiff. After hypothesizing the facts constituting defendant's negligence, it concluded with, "then, unless you further find from the evidence under the other instructions that plaintiff was so negligent as under all the circumstances to prevent his recovery, your verdict will be in plaintiff's favor." etc.

Defendant first asserts that this portion of the instruction "submits to the jury the doctrine of comparative negligence, which does not obtain in this state." This contention is without merit. That doctrine is, that the degrees of negligence must be measured and considered, and whenever it shall appear that the plaintiff's negligence is comparatively slight and that of the defendant gross, plaintiff shall not be deprived of his action. The instruction does not even hint at such a doctrine. Neither does it, as defendant further suggests, "leave it to the jury to say how much negligence plaintiff must have been guilty of before it would bar his recovery."

The complained of portion of the instruction, though somewhat awkward in its construction, does nothing more than tell the jury that plaintiff's recovery is conditioned upon their finding from the evidence that he was not guilty of such negligence as under the other instructions would be sufficient to prevent such recovery.

As defendant makes no complaint concerning the other instructions on that score, we assume without investigation that they correctly and fully set forth the

law relating to contributory negligence under the evidence.

V.   Defendant assigns error in the giving of plaintiff's second instruction in that "it authorizes a verdict upon the theory that the motorman, through his negligence, lost control of his car and for that reason was unable to avoid the collision, whereas the petition proceeds upon the theory that he had control of the car when the danger arose and could have avoided the collision by exercising that control but failed to do so."

The language of the instruction will not bear the construction thus attempted to be placed upon it.   It does not submit an hypothesis that the motorman had lost control of the car, but is consistent with the idea that the motorman kept the control but did not exercise it as an ordinarily prudent man would.   He did not have the car under such control that it could be stopped with sufficient promptitude under the circumstances. The language of the petition is broad enough to cover that situation.   The motorman "carelessly and negligently and without using ordinary care to control or stop said car caused and suffered the same to strike said wagon, etc."   If, as the instruction hypothesizes, the motorman "did not keep his car under such control as an ordinarily prudent man would under all the circumstances in evidence", then, as charged in the petition, he did not use ordinary care to control or stop the car. Defendant in support of his contention quotes from Heinzle v. Railway, 182 Mo. 528, 529, 81 S. W. 848; as follows:   "It (the instruction under consideration) is also faulty in that it enlarges upon the allegations in the petition in saying 'or to keep said car under control' when there is no such averment in the petition."   But in that case nothing was said in the petition about a failure to control the car.   The charge of negligence was that defendant's motorman failed to keep a proper look-

out and was running at an excessive rate of speed and failed to ring the bell.

VI. The defendant next challenges plaintiff's first, second and third instructions on the ground that the first two are inconsistent with the third in that they deny the right of recovery if the plaintiff was guilty of contributory negligence, while the third applies the humanitarian doctrine and allows a recovery in spite of plaintiff's negligence.

In support of this contention, the defendant cites Krehmeyer v. Transit Co., 220 Mo. 639, 120 S. W. 78; Hough v. St. Louis Car Co., 123 S. W. 83; Degonia v. Railroad, 224 Mo. 564, 588, 123 S. W. 807. We find no reference whatever to the question in the last cited case. The doctrine now pressed by defendant finds some support in the opinion of Woodson, J., in the Krehmeyer case. That case was decided by the Supreme Court In Banc, May 22, 1909. But in Childress v. Railroad Co., 126 S. W. 169, decided by the Springfield Court of Appeals, January 3, 1910, and in Shipley v. Railway, 128 S. W. 768, decided by the Kansas City Court of Appeals, May 2, 1910, the very same contention was made as is made here. Each of the opinions, one of which was written by Gray, J., and the other by Johnson, J., contain a discussion disclosing very careful consideration, and in the course thereof it is pointed out that in the Krehmeyer case three of the Supreme Court judges joined in a dissenting opinion, declaring that there was no inconsistency between the two kinds of instructions, and Graves, J., wrote a separate concurring opinion, in which he states that he concurs in the result, but does not follow all of Judge Woodson's reasons.

In the Childress case, the case of Spencer v. St. Louis Transit Co., 222 Mo. 310, 121 S. W. 108, was referred to as indicating Judge Graves' opinion on the subject. This latter case was decided by Division No. 1 of the Supreme Court, July 1, 1909, but little more than

a month after the Krehmeyer case was decided. In it Judge GRAVES wrote the opinion and said of an instruction submitting the case upon both doctrines: "We see no error in this instruction. It reiterates the well recognized humanitarian rule."

In the Shipley case, the Kansas City Court of Appeals overruled the contention that the instructions were inconsistent and said that the two issues could be contested in the same action. In the Childress case the Springfield Court of Appeals found that the instructions submitted only one of the issues and therefore the question was not before them. When the opinion of this Court in Hough v. St. Louis Car Company, supra, was written, our attention had not been called to said cases. We hold that the instructions challenged are not inconsistent and the issues submitted in them may be contested in the same action.

VII. Defendant next contends that the plaintiff's sixth instruction is erroneous in that it authorizes damages for loss of earnings and for future disability to labor, while the petition does not allege and the evidence does not tend to prove, such loss or disability. This assignment of error is overruled. Neither the petition nor the proof is lacking in either of the respects mentioned. [Gerdes v. Iron & Fdy. Co., 124 Mo. 347, 360, 27 S. W. 615; Dean v. Railroad, 199 Mo. 386, 397, 97 S. W. 910.]

The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.