## ·MARTHA E. WAITE, Respondent, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, December 9, 1912.

1. **NEGLIGENCE: House Tracks: Town: Use by Public: Duty of Railway: Lookout.** Where railway tracks and its station house are located in the midst of a town, with main tracks on one side of the platform and a loading or house track on the other, with open ground or commons adjoining, and the public habitually use the grounds and house track in going to and from the station and beyond it, with the knowledge of the company, it becomes its duty to keep a lookout, at a place where he may see, for persons who may be on the track.

2. ———: ———: ———: **Standing Cars on Crossing: Barring Way: Right of Pedestrians: Trespass.** Where a railway company places standing cars on a street crossing and leaves them there, a pedestrian on the street who finds his way barred may go around by crossing over the company's grounds and tracks, and in so doing he is not a trespasser; and if in so doing he is negligently injured or killed by the company's cars, damages may be recovered.

3. ———: ———: ———: **Avoidance of Obstruction: Adjoining Property: Trespass.** If a temporary obstruction bars the progress of one traversing a public highway, he may avoid it by going over adjoining private fields, or property, without becoming a trespasser.

4. ———: ———: ———: **Negligence: Humanitarian Rule: Consistency.** There is no inconsistency in the theories of care on the part of plaintiff and negligence of a defendant, and the humanitarian rule embracing contributory negligence of a plaintiff. Cases referred to.

5. ———: ———: **Statute: Penalty: Compensation.** The statute (Sec. 5425, R. S. 1909) is both penal and compensatory and it is not error against a defendant if an instruction fails to ask for a penalty in addition to compensation.

6. ———: **General Instruction: Nondirection: Measure of Damages.** Nondirection in a civil case is not error, and if a plaintiff asks a general instruction on the measure of damages, which defendant thinks should specially set forth the elements and limitations of the damage, it is defendant's duty to ask an instruction to that effect, and if he does not do so he cannot complain of plaintiff's instruction.

Appeal from Daviess Circuit Court.—*Hon. A. B. Davis*, Judge.

AFFIRMED.

*Paul E. Walker, E. M. Harber* and *M. A. Low* for appellant.

*H. L. Eads* and *A. G. Knight* for respondent.

ELLISON, J.—Plaintiff is the widow of George H. Waite, who was killed by one of defendant's freight trains on one of its tracks at its station grounds in the town of Jamesport, Daviess county. Claiming that his death was caused by the negligence of defendant's servants, she brought this action for damages and prevailed in the trail court.

Jamesport is a town containing several hundred people, with defendant's railway station, grounds and tracks about dividing the business part on the north from the residence portion on the south. There are three tracks on the south of the station building, the one next to the platform being the main track. A long switch or house track, leaving the main track 400 feet below the station and connecting again about the same distance above, runs north of the station, passing along parallel with and in three feet of the platform. A much-traveled street called Broadway connects the business and residence parts of the town and passes over these tracks near the west end of the depot platform. A person coming along Broadway from the business houses to the station, or beyond to the residences, could turn off the street proper some two hundred feet from the station house and cross diagonally over to it on open ground, or, as it was called by some of the witnesses, a common. Or such person could keep in Broadway until he got to the house track at

the west end of the platform and then turn square to the left down the house track, stopping at any place along the platform, or going on beyond as he might desire.

A freight train came in from the east about ten o'clock a. m. It had some freight to be unloaded and there were three or more cars standing with others on the house track which were to be put into the train, and one car in the train to be left on the house track. While some of the crew were unloading the freight, the engineer and brakeman set about getting these standing cars off the house track. In doing it they took the engine and part of the train up to the west end of the house track, backed in on it down to where the standing cars were. Two or three trips back and forth were necessary for the work. On the last trip, in backing down they struck one or more cars standing on the house track at the Broadway crossing, pushing them thence on east along the side of the station platform, striking and killing deceased upon the track a little south of the west end of the station house.

The reason deceased came to be at this place was this: He lived near to but south of the track, and 200 feet or more east of the station. He had been over into the business part of the town with his bucket to procure some vegetables from the stores, and was returning homeward. He was an old man, somewhat deaf. He came south along Broadway until he came to the car blocking his way at the crossing. He then turned east and as he got around or beyond the end of the car, must have gotten onto the house track (the ties of which were covered with dirt, or at least were flush with it) to walk on down past the station house and platform in the direction of his house, or possibly he may have intended to get up on the platform and was struck before doing so.

There was evidence tending to show that while deceased, when he arrived at the crossing, was bound

to have seen other cars than the one immediately in his way, yet on account of obstructions to his view, he could not have seen that there was an engine at the far end.

Plaintiff claims that the house track was used by the public, with the knowledge of defendant, as a way or means of getting to, beyond and from the station, and that therefore it was its duty to expect and look out for such persons when doing train work and use ordinary care to warn them of danger. That defendant's servants saw deceased's peril, or might have seen it by the exercise of ordinary care, in time to have saved his life by stopping the cars or warning him off the track. There was evidence in the case to sustain plaintiff's claim.

As stated, the house track and open ground were on the north of the station platform. Nearby were the business houses of the town. The house track was used by the defendant to load and unload freight cars standing thereon for that purpose. To do this, people and teams continuously crossed the common or open ground, and were necessarily about, over and around this track. One team was so engaged further along at the time deceased was killed. But, as stated above, there was evidence in plaintiff's behalf to show that the general public, local and transient, also used these grounds and the track as a passway, with defendant's knowledge. The station itself was in the midst of the town and adjoined the business portion. In such circumstances it was defendant's duty, when moving its cars, to keep a lookout for persons on the track. [Fearons v. Kansas City El. Ry. Co., 180 Mo. 208, 223; Eppstein v. Mo. Pac. Ry., 197 Mo. 720, 734; Hufft v. Railroad, 222 Mo. 286, 301; Ellis v. Met. St. Ry. Co., 234 Mo. 657, 673; Railroad Co. v. Cross, 58 Kan. 424.] In the first of these cases it is said that the law "demands such operatives to be on the alert, and to keep a lookout for the realization of the anticipation or ex-

pected presence of the person." This duty, therefore, could not be performed by servants putting themselves in position where they could not see if any one was on the track.

In backing down to the crossing to couple onto the standing car or cars, the company's brakeman was on the end car and as the standing cars were approached he climbed down to see that a proper (automatic) coupling was made. After seeing that it was, he climbed back, but at no time, according to his statement, could he see the track ahead, for the reason that these cars to which he coupled were in the way. It was, at least, a question for the jury whether it was not negligence to thus strike and move these cars blindly, whether it was not the requirement of ordinary care, that some servant should have been at such a place as that he could know the way was clear. [Authorities above cited.]

We do not see any reasonable ground upon which to base a charge of contributory negligence, though that question was submitted to the jury. It could be said that deceased was turned into the course he took by defendant itself. For it blocked his way over the street crossing, not only on the house track, but a large part of its train stood over the crossing of the main track on the south side of the platform. While traveling upon the street he found his way barred by defendant. What more natural than that he should go around the obstruction, especially in the direction of his home? Whether he intended to step up onto the platform, or walk on the track further down the platform, is not known, but that he was put into the position by defendant there is no room for doubt. In such situation he was not a trespasser.

There is an old rule of law called *extra viam*, founded upon temporary necessity compelling persons to go out of the usual way, which bears relation to deceased's situation, at least by way of illustration.

Thus if one traveling upon the highway find an insurmountable obstruction therein which blocks his further progress, he may turn into the adjoining field as a means of passing around and he will not be a trespasser. Private property is held subordinate to such emergency use by a person traveling on a *public* highway. [Campbell v. Race, 7 Cush. 408.] In Taylor v. Whitehead, 2 Doug. 745, Lord Mansfield said that highways "are for the public service, and if the usual tract (track) is impassable, it is for the general good that people should be entitled to pass in another line." In effect, this rule was applied in Brown v. Railroad Co.; 50 Mo. 461, 467, where Judge Wagner said: "The crossing was obstructed by the defendant's train, and the plaintiff, therefore, to pursue her journey, turned away and crossed at another place where people were accustomed to cross, but it does not appear that they had any license therefor. The defendant had the right to stop its train at the crossing for a reasonable time, but when the train did stop and obstructed the crossing for the purpose of unloading cars, as was the case here, were travelers always obliged to wait before they could continue their business, till the cars were unloaded? While the railroad company is the absolute owner of its track and has the right to its free and unmolested use, still it is not absolved from the exercise of ordinary care and diligence to prevent injury to others when they happen on the track under the circumstances in which the plaintiff was . . . placed. . . . In towns caution should always be used. . . . As the crossing was obstructed by the act of the defendant, and persons were in the habit of going over the private way, we think that the agents and servants of the defendant were bound to take notice of these facts, and use a precaution commensurate with them." It was applied in Smith v. Railway Co., 84 Ga. 698. If that be the rule where the obstruction was not caused by the adjoining proprietor, for the

greater reason should it apply where such proprietor places the obstruction.

Now defendant did know, or should have known, that when it blocked a main travelled street in the town with its cars, persons would, in all probability, pass around; and it should have had a servant on the lookout from a position where he could see and thus avoid the danger which arose from its act. In this case the engineer's testimony shows that he moved the cars without being able to see the track at the other end, depending, as he properly might, upon signals from the brakeman. But the latter allowed the train to move down the track though he could not see who might be thereon. Of course, even in such circumstances, a person should not go heedlessly into impending danger; and on this phase of the case there was evidence tending to show that the engine and cars moved quietly and, as we have already stated, on account of obstructions to view, the engine could not be seen.

We have considered defendant's objections to instructions and do not think the criticisms made are of sufficient force to say that the jury was misled or misdirected. Certainly a reading of all of them, for either side, leaves one fully impressed that no misunderstanding as to the rights of the parties could result. Point is made that plaintiff is allowed to recover on either of two grounds, viz.: due care of deceased and negligence of defendant; and the humanitarian doctrine, consisting of contributory negligence of deceased with negligence of defendant after discovering his peril, or opportunity for discovering it. It is insisted that there are inconsistent theories, both of which should not be allowed to stand as a basis of recovery. Under the ruling of the Supreme Court in Spencer v. Railway Co., 222 Mo. 310, we think them not inconsistent. This question has been discussed by each of the Courts of Appeals, with the conclusion

that the decision announced by the Supreme Court in the Spencer case is controlling. [Childress v. S. W. Ry. Co., 141 Mo. App. 667; Shipley v. Met. St. Ry. Co., 144 Mo. App. 7; Blyston-Spencer v. Railway Co., 152 Mo. App. 118; Kirchoff v. Railway Co., 155 Mo. App. 70.]

The instruction on the measure of damages was short and quite general. It limited the damages to compensation only, in a sum not less than two nor more than ten thousand dollars. In that respect it ought not to be complained of by defendant, since, as was decided in Boyd v. Railway Co., 236 Mo. 54, the statute is both penal and compensatory. That case fully discussed preceding cases and clearly sets forth the law.

That the instruction might have properly included specific elements and did not, is not reversible error in instances where defendant abides by it and asks none on that head. It is now the settled law in this State that nondirection, in a civil case, is not error; and that if the elements of damage are not set forth in a general instruction for plaintiff, it is defendant's right, if he so desires, to set them forth in an instruction for himself; and that if he fails to do so, he has no ground for complaint. [Browning v. Railway Co., 124 Mo. 55; Wheeler v. Bowles, 163 Mo. 398, 409; Geismann v. Electric Co., 173 Mo. 654, 679; Haymaker v. Adams, 61 Mo. App. 581.] Defendant has cited us many cases deciding what an instruction on the measure of damages may properly contain. But none of these make it compulsory that a plaintiff shall go beyond a general instruction and specify the different elements of limitation of damage.

There are other objections to the judgment, but a careful consideration of these has led us to the conclusion that they do not justify a reversal, and hence we affirm the judgment. All concur.